Sheila Kristin **BRANDENBURG, Executor of the Estate of Stephen Francis Brandenburg, Deceased; Sheila Kristin Brandenburg, Individually; Matthew Brandenburg; Mark Brandenburg; and Sheila Brandenburg, As Mother and Next Friend of Seana Brandenburg, Alexander Brandenburg, and Joseph Brandenburg, Minors, Appellees,**

v.

**FETERL MFG. CO., A Subsidiary of Core Industries, Inc., Appellant.**

No. 98–04.

Supreme Court of Iowa.

Dec. 22, 1999.

John C. Gray of Heidman, Redmond, Fredregill, Patterson, Plaza & Dykstra, L.L.P., Sioux City, for appellant.

Joseph L. Fitzgibbons of Fitzgibbons Law Firm, Estherville, for appellees.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.

LAVORATO, Justice.

The defendant in this personal injury action appeals from a district court ruling denying the defendant's motion to set aside a default and default judgment entered in favor of the plaintiffs. We conclude there was not substantial evidence to support the district court finding that the defendant willfully ignored and defied the rules of procedure in failing to defend in a timely manner. We therefore hold the district court abused its discretion in concluding there was no excusable neglect constituting good cause to set aside the default and default judgment. We therefore reverse and remand with directions and for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

On February 2, 1996, Stephen Brandenburg was killed while using a grain auger allegedly manufactured by Feterl Manufacturing Company. Feterl is a South Dakota corporation and is a subsidiary of Core Industries, Inc., a Michigan corporation. Helen and Gary Brown allegedly owned the auger, which Stephen was apparently using in the course of doing work for them on their farm.

Several days after the accident, Ronald Feterl (a former Feterl employee) read a newspaper article about the accident. He sent a copy of the article to Don Jensen, a Feterl sales representative. Jensen immediately forwarded the newspaper article to Darrell Streff, president of Feterl.

After receiving the article on February 6, Streff immediately contacted Tony Krull. Krull is the manager of insurance and employee benefits at Core. Streff did not know any details surrounding Stephen's death other than that Stephen had been killed while using an auger allegedly made by Feterl. However, Streff did fax Krull a copy of the newspaper article and a handwritten note regarding the auger.

Krull faxed this information to Jim Warzyniec, an account executive for Willis Corroon. Willis Corroon is a global insurance brokerage firm. Core is a client of the firm, and Warzyniec handles Core's accounts with Willis Corroon. Krull's fax requested Warzyniec to notify Core's primary and excess liability carriers of the accident, even though Feterl had not itself been formally notified of it.

Willis Corroon contacted Travelers, Core's primary liability carrier, about the accident. On February 27 Travelers sent a letter to Krull, advising him that Travelers had been notified of the accident and requesting that Krull contact Travelers if a lawsuit was filed. Later, Krull advised Warzyniec of Travelers' acknowledgment.

In December 1996 the claims administration for Willis Corroon was moved to Willis Corroon Administrative Services (WCAS), a third-party claims administrator that handles claims for Willis Corroon. Both entities are in the same building. Steve Smith is the claims manager for WCAS.

On April 27, 1997, the plaintiffs filed this lawsuit against Feterl, alleging that the defendant had negligently caused Stephen's death. The plaintiffs also alleged that the Browns' negligence was a proximate cause of his death. The plaintiffs are Sheila Kristin Brandenburg as executor of Stephen's estate and individually; Matthew Brandenburg and Mark Brandenburg (Stephen's adult children); and Sheila Kristin Brandenburg as mother and next friend of Seana Brandenburg, Alexander Brandenburg, and Joseph Brandenburg, minors. The petition asked for damages for the estate as well as loss of consortium for Sheila and for the five children.

On April 28 a deputy sheriff of McCook County, South Dakota, served a copy of the original notice and petition on Feterl by serving Streff. Streff immediately faxed copies of the documents to Krull and asked that Feterl's insurance carriers be notified.

Krull called Streff to acknowledge that he had received the fax and told Streff he would notify Willis Corroon. He also told Streff that (1) he would send the suit papers to the insurance company; (2) Steve Smith of WCAS would be the claims representative handling the lawsuit; and (3) if Streff did not hear from Smith within a couple of days, that Streff should call Smith. During this conversation, Streff and Krull discussed Doug Oelschlaeger as a possible attorney for the case. According to Streff, Oelschlaeger had worked on a previous case for Feterl in Iowa. Streff and Krull knew that, while they could recommend an attorney, Feterl's insurance carriers were responsible for actually selecting an attorney to defend the lawsuit.

On April 29 Krull mailed the suit papers along with a cover letter to Warzyniec in which Krull asked that the suit papers be forwarded to Feterl's insurance carriers. Warzyniec never received the letter. A copy of the letter and its contents were also mailed to Frank Brochert, who received them on May 2. Brochert is an attorney for the Detroit law firm of Plunkett & Cooney. Brochert, a products liability specialist, has in the past worked with Core on various claims and settlements. Core hired Brochert to review suit papers, answer Krull's questions, and to act as a buffer between Core and the carriers and the lawyer the carriers select. Smith could consult with Brochert on selection of counsel, but Core did not expect Brochert to select counsel or to appear himself in any lawsuit.

Brochert and Krull spoke by phone, and Krull asked Brochert to review the suit papers and file them for future reference. No one asked Brochert to hire defense counsel for this lawsuit or to answer the petition. Brochert did not contact Willis Corroon or Travelers to see if the lawsuit was being handled. Nor did he contact anyone at Core to discuss the lawsuit after his initial conversation with Krull.

By May 7 Streff had not yet heard from Smith. On that date—per Krull's previous direction—Streff contacted Smith by phone. Smith told Streff that he—Smith—had not taken any action on the lawsuit because he had not yet received the suit papers from Warzyniec. During this conversation, Streff told Smith that an answer had to be filed by May 18 to avoid a default. Streff also told Smith he would fax Krull a recommendation for an attorney for the case. Thereafter, Streff faxed such a recommendation to Krull, and Krull received the fax. Apparently, there was little subsequent communication among Streff, Krull, Brochert, Warzyniec, and Smith about the lawsuit. Streff did not follow up with Smith a second time to make sure Smith had received the suit papers from Warzyniec.

On May 29—thirty-one days after Feterl was served—the district court held a hearing on the plaintiffs' motion for default and default judgment. Feterl was not notified of the hearing. Neither Feterl nor anyone appearing for it attended the hearing. The Browns had filed an answer and a waiver of notice and opportunity to be present at the hearing. The district court entered a default judgment against Feterl for $1,130,215.

The clerk of court mailed a copy of the default judgment to Feterl on June 30, 1997. On July 1 Streff faxed copies of the default judgment to Krull and Smith. Thereafter, Smith called Streff, apologized for the default, and said he had forgotten about the lawsuit.

On July 8 Feterl filed a motion to set aside the default pursuant to Iowa Rule of Civil Procedure 236 (providing that court may set aside a default or default judgment for good cause shown on the grounds of mistake, inadvertence, surprise, excusable neglect, or unavoidable casualty). Following a hearing on the motion, the district court issued its ruling. The court first found there was no basis to set aside the default judgment for mistake, surprise, or unavoidable casualty—three of the five grounds for setting aside a default judgment under rule 236.

The court concluded that inadvertence and excusable neglect—the remaining two grounds—were "barely distinguishable" and considered them together. In doing so, the court focused on our holding in *Central National Insurance Co. of Omaha v. Insurance Co. of North America*, 513 N.W.2d 750 (Iowa 1994). In that case, we set out several factors for determining "excusable neglect" constituting good cause. The district court found against Feterl as to one of those factors—whether the defaulting party willfully ignored or defied the rules of procedure. For that reason the district court denied Feterl's motion to set aside the default judgment.

Feterl appealed, contending, among other things, that the district court abused its discretion in refusing to set aside the default and default judgment pursuant to rule 236.

## II. Whether the District Court Abused its Discretion in Refusing to Set Aside the Default and Default Judgment.

### A. Rule 236 and scope of review.

Rule 236 provides that,

[o]n motion and for good cause shown, and upon such terms as the court prescribes, but not ex parte, the court may set aside a default or the judgment thereon, for mistake, inadvertence, surprise, *excusable neglect* or unavoidable casualty. Such motion must be filed promptly after the discovery of the grounds thereof, but not more than sixty days after entry of the judgment. Its filing shall not affect the finality of the judgment or impair its operation.

(Emphasis added.)

We recently reviewed the principles guiding our review of a court's ruling on a motion to set aside a default and default judgment in *Central National Insurance Co.*, 513 N.W.2d at 753:

We vest district courts with broad discretion in ruling on a motion to set aside a default. We reverse such a ruling only if this discretion is abused. Generally, we find such an abuse only when there is a lack of substantial evidence to support the district court's ruling. We are bound by the district court's findings of fact if supported by substantial evidence, and we view the evidence in the light most favorable to the district court's ruling.

(Citations omitted.)

■ The movant has the burden to plead and prove good cause under the rule. *Id.* at 754. The movant establishes good cause only if the movant proves one of the grounds in the rule. *Id.* A determination of whether a movant has established good

cause is not a finding of fact; rather, it is a legal conclusion, which is not binding upon us.

■ We are more reluctant to interfere with a court's grant of a motion to set aside a default and a default judgment than with its denial. *Id.* In that sense, we look with disfavor on a denial of such a motion, and we think all doubt should be resolved in favor of setting aside the default and default judgment. This attitude reflects our view of the underlying purpose of rule 236: "to allow a determination of controversies on their merits rather than on the basis of nonprejudicial inadvertence or mistake." *Whitehorn v. Lovik*, 398 N.W.2d 851, 853 (Iowa 1987).

### B. Excusable neglect.

In *Central National* we recognized that our previous cases had shown more liberality in granting relief on the excusable-neglect ground when the mistake was that of an attorney or insurer rather than of the litigant alone. *See Central Nat'l*, 513 N.W.2d at 755. We found this approach too narrow, quoting with approval the following language from a dissent in *First National Bank v. Claiser*, 308 N.W.2d 1, 3 (Iowa 1981) (Uhlenhopp, J., dissenting):

I think we should reexamine the rationale of our decisions under rule 236. When the party against whom a default is entered actually desires to prosecute his claim (if a plaintiff) or to present his defense (if a defendant), the default frequently constitutes a windfall for the other party; the latter party might not be able to prevail if the case were heard on the merits. Moreover, with the default set aside, often the latter party is no worse off, on the merits of the case, than if the default had not been entered. The loser, however, is deprived of his claim or defense without trial, irrespective of its merits.

I do not refer to the case in which a party willfully ignores the rules of procedure or defies them. I refer to the

cases involving bungles. Rule 236 does not contemplate a blameless party; it *contemplates* that some fault actually exists; it allows relief for "neglect," if the neglect is "excusable." If the party is so culpable as to be inexcusable, the guilty party can have no relief.

The federal courts grant relief quite readily in order to get to the merits and avoid harsh results. I would adopt the rationale of decisions of this kind and grant relief in the present case.

Following the spirit of this dissent, we liberalized our approach to the excusable-neglect ground by requiring the district court to focus on the following four factors when determining "excusable neglect" constituting good cause:

> First, did the defaulting party actually intend to defend? Whether the party moved promptly to set aside the default is significant on this point. Second, does the defaulting party assert a claim or defense in good faith? Third, did the defaulting party willfully ignore or defy the rules of procedure or was the default simply the result of a mistake? Last, whether relief is warranted should not depend on who made the mistake.

*Central Nat'l,* 513 N.W.2d at 756.

The first two factors carry forward requirements our prior cases have established for proving excusable neglect constituting good cause. *See, e.g., In re Marriage of Huston,* 263 N.W.2d 697, 698 (Iowa 1978) ("The movant must affirmatively show he intended to defend and took steps to do so, but because of some misunderstanding, accident, or excusable neglect failed to do so."); *Edgar v. Armored Carrier Corp.,* 256 Iowa 700, 707, 128 N.W.2d 922, 926 (1964) (holding that district court has discretion to set aside a default and default judgment when the defendant (1) acts promptly, (2) in good faith intends to defend, and (3) shows a meritorious defense).

■ As to the third factor, to uphold a denial of a motion to set aside a default and default judgment, there must be substantial evidence that the *defaulting party willfully ignored or defied* the rules of procedure. "Willfully" and "defying" signal conduct that goes beyond negligent or careless conduct. Such words indicate conduct on the part of the defaulting party showing a deliberate intention to ignore, and resist any adherence to, the rules of procedure. This requirement of willfulness is consistent with our previous holdings that excusable neglect warranting relief from a default excludes conduct amounting to no care, no attention and approaching gross neglect or willful procrastination. *See Hobbs v. Martin Marietta Co.,* 257 Iowa 124, 131–32, 131 N.W.2d 772, 777 (1964).

■ If there is substantial evidence the default occurred as a result of a mistake, such evidence, of course, is inconsistent with conduct that willfully ignores or defies the rules of procedure. In *Central National,* when we used the word "mistake" in the third factor, we had in mind the dictionary meaning of that word: "an error in action, calculation, opinion, or judgment caused by poor reasoning, carelessness, insufficient knowledge ...." Webster's Encyclopedic Unabridged Dictionary of the English Language 1232 (2d ed.1996).

In *Central National* our intention underlying the fourth factor (relief should not depend on who made the mistake) was to eliminate any distinction between conduct on the part of the defaulting party versus conduct on the part of the party's insurer or attorney. *See* 513 N.W.2d at 755–56. In the past, more liberality had been shown in granting relief when the mistake was that of the party's insurer or attorney rather than of the litigant alone. *Compare Flexsteel Indus., Inc. v. Morbern Indus. Ltd.,* 239 N.W.2d 593, 598–99 (Iowa 1976) (default set aside when the defendant's insurer misunderstood original notice), *Edgar,* 256 Iowa at 705–07, 128 N.W.2d at 925–26 (default set aside when notice was lost or mislaid by defendant's insurer), *and*

*Handy v. Handy*, 250 Iowa 879, 885, 96 N.W.2d 922, 926 (1959) (default set aside when default was due to trial counsel's failure to appear at time set for trial), *with Haynes v. Ruhoff*, 261 Iowa 1279, 1284–86, 157 N.W.2d 914, 917–18 (1968) (defendant's confusion as to import of notice not grounds to set aside default judgment), *and Madsen v. Litton Indus., Inc.*, 498 N.W.2d 715, 718 (Iowa 1993) (defendant's mistaken belief that personal injury case was already in litigation because of mislabeling of file did not excuse defendant's failure to respond to original notice served as required to set aside resulting default judgment).

With these principles in mind, we turn to the record in this case.

### C. The merits.

■ **1. Willfully ignoring or defying the rules of procedure.** The district court found that Feterl intended to defend the lawsuit. The court cited Streff's actions in support of this finding, noting that, when the accident first occurred, he immediately notified the appropriate officials at Core of the claim. Additionally, the court noted that, when the suit papers were served, Streff immediately sent them to Krull and, after waiting a few days, contacted Smith at WCAS as Krull instructed him to do. The court also found that Feterl moved promptly to set aside the default as soon as Feterl learned of it.

Additionally, the district court found Feterl had a good-faith defense. In support of this finding, the court noted that Feterl filed an answer setting forth affirmative defenses and denying the key allegations in the petition. The court cited previous case authority holding that (1) a general denial in an answer is sufficient to constitute a prima facie showing of a meritorious defense, and (2) it is not necessary for the moving party to introduce other evidence tending to prove that it has such a defense.

The court, however, found that Feterl had willfully ignored or defied the rules of

procedure. The fighting issue then is whether there was substantial evidence to support this finding. For reasons that follow, we conclude there was not substantial evidence to support the finding.

The district court found that there was no presumption that Warzyniec ever received the suit papers from Krull. The court therefore proceeded on the assumption that Warzyniec never received the papers. We note that whatever evidence there is on this point supports a finding that Warzyniec never received the papers. Warzyniec testified he never received the papers, and there is no record evidence to dispute his testimony.

The district court then made the observation that, had there been no evidence other than the fact that Krull had sent the suit papers and Warzyniec had not received them, the court should then set aside the default judgment. The court, however, found these two key facts (Krull's sending the suit papers and Warzyniec not receiving them) were not controlling for two reasons. First, Brochert received the suit papers from Krull, so he knew about the lawsuit and did nothing about it. Second, Streff on May 7 told Smith about the lawsuit, and Smith did nothing about it.

It is at this point that the district court's analysis falters. The court's focus should not have been on what other people failed to do because those failures cannot be imputed to Feterl. *See Flexsteel*, 239 N.W.2d at 597–99 (holding that insurer's mistake resulting in default could not be imputed to defendant so as to bar opening of default judgment). The focus should have been on whether the default resulted from a mistake or from Feterl's willfully ignoring the rules of procedure.

■ We think the facts are undisputed that the default resulted from a mistake. Earlier we said that a mistake is an error in action caused by carelessness. The error in action that resulted in the default was Smith's waiting until he received the suit papers that never came before taking

action to defend. This error was due to Smith's neglect because he should have followed up his conversation with Streff by making sure a timely answer had been filed or an extension from the plaintiffs' attorney had been secured. The fact that Smith neglected this task and then ultimately forgot about the lawsuit does not, as a matter of law, equate to Feterl's willfully ignoring or defying the rules of procedure. Moreover, we think a finding that Feterl intended to defend is inconsistent with a finding that Feterl willfully ignored and defied the rules of procedure.

Feterl is not unlike the defaulting party in *Hobbs.* 257 Iowa at 131–32, 131 N.W.2d at 777 (reversing district court's denial of defendant's motion to set aside default and default judgment). In *Hobbs* we said that large enterprises were not required to constantly check to see that papers sent through the regular channels are received and acted upon. 257 Iowa at 132, 131 N.W.2d at 777. Nor did we think the failure to do so amounted to such willful procrastination as to preclude relief from a default and default judgment. *See id.* Therefore, the fact that Feterl did not follow up to make sure an answer had been filed or an extension had been obtained does not, as a matter of law, rise to the level of willfully ignoring or defying the rules of procedure.

■ **2. Prejudice.** Before concluding, we address the district court's finding that the plaintiffs would be prejudiced if the court set aside the default and default judgment. The prejudice the district court found was the harm the plaintiffs would suffer by the delay that would arise from setting aside the default and default judgment and proceeding to trial. This court has indicated that prejudice to the plaintiff should be given some consideration on the question whether to set aside a default and default judgment. *See Davis v. Glade,* 257 Iowa 540, 545, 133 N.W.2d 683, 686 (1965); *Edgar,* 256 Iowa at 706, 128 N.W.2d at 925.

In both *Davis* and *Edgar,* however, this court found no prejudice when the motion to set aside was filed quickly after default judgment and there would be no undue delay of trial on the merits. *Id.* As the court stated in *Davis:*

> It is true absence of prejudice is an important element in these cases. But we are unable to see where such prejudice to the plaintiff has resulted here. The motion to set aside the default was filed within nine days after entry. The court's ruling left the plaintiff unharmed so far as the merits of the case are concerned; he still has his action pending against the defendant exactly as it was before the default was entered.

257 Iowa at 544-45, 133 N.W.2d at 686.

We are faced with a similar situation here. Feterl filed its motion a mere seven days after receiving notice of the default judgment. Except for this appeal, plaintiffs' trial on the merits has not been significantly postponed. Nor will the plaintiffs be harmed in prosecuting their case. Nothing has occurred because of the passage of time (two months) between the time the petition was served and the time the motion was argued that would prevent or make more difficult plaintiffs' proving their case. *See Horn v. Intelectron Corp.,* 294 F.Supp. 1153, 1155 (S.D.N.Y.1968) (finding no prejudice to plaintiffs when six months passed between notice of complaint and motion to set aside).

Given the brief time period in which a motion to set aside may be filed under rule 236, we doubt whether a delay of trial on the merits resulting from actually setting aside a default judgment should ever constitute any real basis for denying relief from a default and default judgment. Federal courts have held that a potential delay in proceeding to the merits caused by setting aside a default judgment should nevertheless not preclude relief from the default judgment. *See, e.g., United Coin Meter Co. v. Seaboard Coastline R.R.,* 705 F.2d 839, 845 (6th Cir.1983) ("Mere delay in satisfying a plaintiff's claim, if it should

succeed at trial, is not sufficient prejudice to require denial of a motion to set aside a default judgment."); *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656–57 (3d Cir. 1982) ("Delay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default judgment entered at an early stage of the proceeding."); *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C.Cir.1980) (holding that delay in satisfaction of a claim resulting from setting aside a default judgment is insufficient to require affirmance of the denial of a motion to set aside).

The district court also held the plaintiffs would be harmed by losing out on a judgment they expected to carry them into the future. No Iowa case supports this reasoning as a basis for refusing to set aside a default judgment. In fact, as the dissent in *First National Bank* asserts, a default frequently constitutes a windfall for the party in whose favor the default is rendered because such party might not be able to prevail if the case were heard on the merits. 308 N.W.2d at 3 (Uhlenhopp, J., dissenting). We are not inclined to recognize this expectancy as sufficient to constitute prejudice were relief against the default and default judgment granted.

For these reasons we find no substantial evidence to support a finding of prejudice here.

## III. Disposition.

We find no substantial evidence to support the district court's finding that (1) Feterl willfully ignored or defied the rules of procedure in failing to defend in a timely manner and (2) the plaintiffs would suffer prejudice were the motion to set aside granted. We therefore hold the district court abused its discretion in concluding there was no excusable neglect constituting good cause to set aside the default and default judgment. We reverse and remand for an order granting the motion to set aside the default and default judgment

and for further proceedings consistent with this opinion.

**REVERSED AND REMANDED WITH DIRECTIONS.**