**IN THE COURT OF APPEALS OF IOWA**

No. 14-0580
Filed November 26, 2014

**IN RE THE MARRIAGE OF WENDY MALONE
AND PAUL MALONE**

**Upon the Petition of
WENDY MALONE,**
        Petitioner-Appellee,

**And Concerning
PAUL MALONE,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Scott County, Paul L. Macek,

Judge.


        A husband appeals the district court order denying his motion to set aside

a default dissolution decree.  **AFFIRMED.**


        Gary D. McKenrick of Cartee & McKenrick, P.C., Davenport, for appellant.

        Jennifer Olsen of Olsen Law Firm, Davenport, for appellee.


        Heard by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**VOGEL, P.J.**

A husband appeals the district court order denying his motion to set aside a default dissolution decree. The district court found and the record supports the husband was not credible in his testimony concerning his reasons for not attending scheduled settlement conferences. We conclude the district court did not abuse its discretion in determining he did not meet his burden to show good cause for the default, such that it should be set aside.

## I.     Background Facts & Proceedings

On October 8, 2012, Wendy Malone filed a petition for dissolution of her marriage with Paul Malone. She requested joint legal custody of the parties' two minor children, with the children placed in her physical care. She requested that Paul receive reasonable visitation with the children and be required to pay child support. Wendy asked for an equitable division of the marital assets and debts. She also requested spousal support and attorney fees. After Paul received notice of the petition, he obtained the services of attorney Breanne Schadt, who filed an appearance on his behalf on October 31. Paul's answer was filed the same day and disputed the issues of physical care, visitation, child support, spousal support, and property division.

On November 21, Wendy filed an application for an order on temporary matters. Paul's affidavit of financial status showed he had annual income of $61,593. Both parties, with their counsel, appeared at a hearing on temporary matters held on January 11, 2013.[1]

---

[1] Unless otherwise specified, all dates in the remainder of the opinion will refer to 2013.

The court entered an order on February 26, granting the parties temporary joint legal custody of the children, with Wendy having physical care. Paul was granted visitation on alternating weekends and every Wednesday night. He was ordered to pay child support of $994 per month and to carry health insurance for the children. A hearing was also set for April 24 on Paul's request for physical care of the children.

Meanwhile, on February 7, in a Trial Setting Conference Memorandum the court scheduled the settlement and pretrial conferences for September 5. This order provided, "The parties and their counsel, including any counsel for the children, MUST attend both conferences." Additionally, it stated, "If the parties or counsel fail to comply with this order, the Court may impose any sanction contemplated by Iowa Rule of Civil Procedure 1.602(5)." The same order set the dissolution trial for October 1.

Prior to the scheduled hearing on temporary physical care of the children, the parties agreed to temporary joint physical care. They also agreed to many details promoting the arrangement. This order was amended on July 11, to suspend Paul's visitation with the oldest child until the child's therapist recommended the visits resume. Paul's visitation with the younger child continued under the agreed upon schedule. Paul's attorney approved both of these orders as to form and content.

On July 31, Wendy filed an application for rule to show cause alleging seven distinct violations of the temporary custody orders. Paul filed an answer to the application, denying in large part the allegations. The application was set for a hearing on August 30. Wendy, Paul, and their attorneys were present when

the court entered an order setting an evidentiary hearing on the application for November 26, and continuing the dissolution trial to the same date. The settlement conference was continued to November 14.[2]

In the meantime, the parties entered into an agreement to have a custody evaluation and psychological examination of the parties. The district court entered an order on October 22, approving of the agreement, appointing the expert to be utilized, and ordering Paul to pay for the cost of both the custody evaluation and psychological examination. The expert's report was to be submitted at least fourteen days prior to trial, which would be November 12. This order was approved as to form and content by the attorneys for the parties.

On November 5, Paul filed a motion to continue the trial set for November 26, stating the expert had advised that the child custody evaluation and psychological examination could not be completed on time. A hearing on the motion to continue was set for November 22. On November 8, Schadt filed a motion to withdraw as Paul's attorney on the ground there had been a breakdown of the attorney-client relationship as Paul had been unwilling to contact Schadt. The motion indicates a copy was mailed to Paul. A hearing on the motion to withdraw was set for November 14, at the same time set for the settlement conference.

Paul did not appear at the joint settlement conference and hearing on the motion to withdraw on November 14. Finding Paul had been advised that attendance at the settlement conference was required, the court assessed Paul a

---

[2] Due to the entry of the default decree, Wendy later dismissed her application for rule to show cause on December 19.

fine of $500 for failure to appear. The court rescheduled the settlement conference for November 26—the date previously set for trial—and determined the dissolution trial would be rescheduled at that time. The order states, "**The Clerk shall notify attorneys of record and parties not represented**," and "Copies were mailed to: Counsel of Record." In a separate order the court granted Schadt's motion to withdraw as Paul's counsel and directed her to serve a copy of the order on Paul by certified mail.

Paul failed to appear for the settlement conference scheduled for November 26 but later stipulated he had received the certified mail from his attorney. The certified mail, which Paul received on November 18, contained a copy of the order permitting Schadt to withdraw as Paul's counsel and a copy of the order resetting the settlement conference for November 26. Wendy sought entry of a default dissolution decree as a sanction for Paul's failure to appear, as well as his failure to obtain the court ordered custody evaluation. The court determined Paul had adequate notice and failed to appear and present evidence. The court granted Wendy's request for a default dissolution decree, which was to be prepared by Wendy's counsel within seven days. Again, the clerk was directed to "notify attorneys of record and parties not represented." The certificate of service provides copies of the order were sent to, "attorneys of record."

The court entered a default dissolution decree for the parties on November 27. Among the more specific provisions within the decree were the following: The court granted the parties joint legal custody of the children, with Wendy having physical care. Paul was granted visitation with the oldest child at

the discretion of Wendy, with input from the child. He was granted visitation with the younger child on every Tuesday evening, alternating weekends, alternating holidays, and two weeks in the summer. He was ordered to pay child support of $1170 per month and to provide health insurance for the children. Paul was also ordered to pay spousal support of $700 per month for sixty months.

The court divided the parties' property to give Wendy her retirement account and mutual funds, one-half of Paul's retirement account, her vehicle, and personal property in her possession. Paul was awarded one-half of his retirement account, his vehicle, a boat, two motorcycles, and two ATVs. Paul was ordered to pay Wendy a property equalization settlement of $10,000. Each party was assessed certain debts, which generally followed the property awarded to each. Finally, Paul was ordered to pay $1000 toward Wendy's trial attorney fees and the costs of the action.

On December 20, having obtained new counsel, Paul filed a motion to set aside the default dissolution decree. He stated he had never been served with notice Wendy was seeking a default dissolution decree. He asserted that if he had known there was a pending default he would have obtained counsel and contested Wendy's intent to seek a default decree. He stated his failure to attend the proceedings on November 14 and November 26, was not willful nor in bad faith. He stated he was unaware of the court dates due to the breakdown in communication between himself and Schadt. Paul submitted an affidavit stating he did not know there was a settlement conference scheduled for November 14 until the day before, and he was working out of the state at the time. He asserted

he had tried to defend the lawsuit since its inception. Wendy resisted the motion to set aside.

A hearing on the motion was set for January 13, 2014, but continued until February 4, and again until March 26. At the hearing Wendy testified Paul was present on August 30, 2013, when the court set the settlement conference for November 14, and the dissolution trial for November 26. Schadt also testified Paul was in attendance for the August 30 hearing, and her records reflected Paul was not only handed a copy of the order entered that day but also mailed a copy of the order, which bore the dates of the settlement conference and trial. Schadt also testified she sent Paul, via certified mail, a copy of the November 14 order permitting her to withdraw and the order resetting the settlement conference for November 26. This was her last correspondence with him. Paul testified he had been working in northern Minnesota for six weeks when on November 13, he received an email from Schadt informing him of the settlement conference for the next day, and he informed her he would not be able to make it back. He stated he had been coming home on weekends, but the post office was not always open at that time. On cross-examination, he stated he continued to participate in visitation with the parties' youngest child, which included some visitation on Mondays and Tuesdays. Paul admitted, and his attorney stipulated, he did receive the orders Schadt sent him via certified mail from the November 14 hearing. Nonetheless he failed to appear for the November 26 hearing.

The district court denied Paul's motion to set aside the default dissolution decree. The court found Schadt's testimony credible that she had provided Paul with copies of court orders before she withdrew as his attorney on November 14.

The court determined Paul's testimony he could not get his mail because he was out of town was intentionally misleading. In addition to finding Paul had not attended the settlement conferences, then trial,[3] scheduled for November 14 and November 26, respectively, the court noted Paul had not any taken steps to obtain a custody evaluation, as required by the court's order of October 22. The court concluded Paul had not shown good cause for setting aside the default dissolution decree. The court found, "by not appearing, he willfully ignored the court's order. This failure was not a mistake. His conduct showed a deliberate intention to ignore the court's order." Paul now appeals the district court's decision denying his motion to set aside the default dissolution decree.

## II.    Standard of Review

A motion to set inside a default judgment is tried at law, not in equity. *In re Marriage of Cutler*, 588 N.W.2d 423, 429 (Iowa 1999). The district court has broad discretion in ruling on a motion to set aside a default, and we will reverse the court's ruling only if it abuses its discretion. *Central Nat'l Ins. Co. v. Ins. Co. of N. Am.*, 513 N.W.2d 750, 753 (Iowa 1994). "All doubts are resolved in favor of setting aside the default." *Wilson v. Liberty Mut. Group*, 666 N.W.2d 163, 166 (Iowa 2003).

---

[3] On August 30, 2013, the court reset the settlement conference for November 14 and trial date for November 26. When Paul failed to appear for the settlement conference on November 14, the court rescheduled the settlement conference for November 26 and stated the trial would be rescheduled at that time. The settlement conference was not held on November 26, however, because Paul did not appear. Thus, the trial was never rescheduled from the date of November 26.

### III.    Merits

"A default judgment is a judgment against the party who has failed to take the next step required in the progress of a lawsuit." *Jack v. P & A Farms, Ltd.*, 822 N.W.2d 511, 515 (Iowa 2012).  A default judgment should be upheld if the "defaulting party willfully ignored or defied the rules of procedure." *Wilson*, 666 N.W.2d at 166.  A default judgment is justified when a party's failure to comply with court orders is the result of willfulness, fault, or bad faith. *In re Marriage of Williams*, 595 N.W.2d 126, 129 (Iowa 1999).  The general policy in Iowa is "to allow a determination of controversies on their merits rather than on the basis of nonprejudicial inadvertence or mistake." *Jack*, 822 N.W.2d at 519.

A default judgment may be entered if a party, "fails to comply with any order of court."  Iowa R. Civ. P. 1.971(4).  The February 7, 2013 Trial Setting Conference Memorandum provided that a failure to comply with that order, which included a requirement that the parties must attend the settlement conference, could result in sanctions under rule 1.602(5).  Rule 1.602(5) provides:

> If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference or if a party or party's attorney fails to participate in good faith, the court, upon motion or the court's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in rule 1.517(2)(b)(2)-(4).

A party is required to adhere to a trial setting conference memorandum. *See Lawson v. Kurtzhals*, 792 N.W.2d 251, 259 (Iowa 2010).  The district court has the inherent power to enforce pretrial orders by imposing sanctions. *Fry v. Blauvelt*, 818 N.W.2d 123, 130 (Iowa 2012).  The court may impose sanctions

against a party or a party's attorney. *Reis v. Iowa Dist. Ct.*, 787 N.W.2d 61, 73 (Iowa 2010). "Although district courts have discretion in deciding whether to enforce pretrial orders, 'it is incumbent upon a reviewing court to scrutinize the exercise of that discretion and to confine the exercise to reasonable limits.'" *Fry*, 818 N.W.2d at 130 (citation omitted). "Because the sanctions of dismissal and default judgment preclude a trial on the merits, the range of the trial court's discretion to impose such sanctions is narrow." *Fenton v. Webb*, 705 N.W.2d 323, 326 (Iowa Ct. App. 2005). "Dismissal and entry of a default judgment should be the rare judicial act." *Kendall/Hunt Publ'g Co. v. Rowe*, 424 N.W.2d 235, 241 (Iowa 1988).

"[R]endering a judgment by default against the disobedient party" is one of the sanctions permitted by rule 1.517(2)(b)(3). We conclude that under the Iowa Rules of Civil Procedure a default judgment was an available sanction the district court could impose against Paul for failure to comply with the court order requiring, "parties and their counsel . . . MUST attend both conferences."[4] Paul does not dispute that he failed to attend the settlement conferences and trial scheduled for November 14 and November 26.

---

[4] We note that while a default judgment was available as a sanction to the district court for Paul's failure to obey a court order, there was no compliance with the notice requirements of rule 1.972. Also, rule 1.973(2) provides, "In all cases the court on motion of the prevailing party, shall order the judgment to which the prevailing party is entitled, provided notice and opportunity to respond have been given to any party who has appeared." Paul was not given notice Wendy was seeking a default judgment or given the opportunity to respond to her request. He raised this issue in his motion to set aside the default judgment, but the court did not rule on it. Additionally, Paul has not raised this issue on appeal. His failure to argue this issue on appeal is a waiver of the issue. *See* Iowa R. App. P. 6.903(2)(g)(3).

We turn then to the issue of whether the district court abused its discretion in denying Paul's motion to set aside the default judgment. Iowa Rule of Civil Procedure 1.977 provides:

> On motion and for good cause shown, and upon such terms as the court prescribes, but not ex parte, the court may set aside a default or the judgment thereon, for mistake, inadvertence, surprise, excusable neglect or unavoidable casualty. Such motion must be filed promptly after the discovery of the grounds thereof, but not more than 60 days after the entry of the judgment.

The party filing a motion to set aside a default judgment has the burden to prove good cause. *Brandenburg v. Feterl Mfg. Co.*, 603 N.W.2d 580, 584 (Iowa 1999). Whether a party has established good cause is not a factual finding, instead, it is a legal conclusion, which is not binding on appeal. *Id.*

Paul contends he has established good cause under the alternative of excusable neglect. In considering excusable neglect, the Iowa Supreme Court has stated that rule 1.977 "does not contemplate a blameless party; it *contemplates* that some fault actually exists; it allows relief for 'neglect,' if the neglect is 'excusable.'" *Id.* at 585. The court set out four factors to consider in determining whether a party has established excusable neglect: (1) did the defaulting party actually intend to defend the case; (2) does the defaulting party assert a claim or defense in good faith; (3) did the defaulting party willfully ignore or defy the rules of procedure, or was the default simply the result of a mistake; and (4) whether relief is warranted should not depend upon who, the party or an attorney, made the mistake. *Id.* Paul claims his lack of action was due to his "frustration" with the case, but frustration with ongoing litigation is not an appropriate factor to apply in determining whether there is excusable neglect.

For the first factor, one element to consider is whether the party acted promptly to set aside the default. *Id.* The default dissolution decree was entered on November 27, and Paul filed his motion to set aside the decree on December 20. Overall, the evidence as to whether Paul actually intended to defend the case is ambiguous. Paul was actively involved in the dissolution proceedings up to October 22, when the court granted his request for a custody evaluation. On November 5, Paul filed a motion to continue, stating the expert appointed by the court to conduct the child custody evaluation and psychological examination of the parties, "has advised" that the work could not be completed on time. Quite telling of Paul's at least temporarily disengaging in the process was his admission during the hearing on the motion to set aside the default decree, that he had not even contacted the expert to begin the court ordered examinations. His November 5 motion was not truthful. After filing the November 5 motion, Paul did not participate in the case again until he filed his motion to set aside the default dissolution decree on December 20. He then took the position that his lack of participation centered on the problems he was having with his attorney. We agree with the district court that while earlier in the case Paul actually intended to defend, by the time the default dissolution decree was entered he was no longer taking steps to defend the case. *See In re Marriage of Huston*, 263 N.W.2d 697, 698 (Iowa 1978) ("The movant must affirmatively show he intended to defend and took steps to do so.").

For the second factor, we consider whether Paul was asserting a claim or defense in the dissolution proceedings in good faith. *See Brandenburg*, 603 N.W.2d at 585. Again, the evidence shows Paul had good-faith claims and

defenses he intended to present in the dissolution proceedings, but by the time the default dissolution decree was entered, he was no longer presenting those claims and defenses. Indeed, he was delaying the process by not even beginning the process to secure the expert and then misleading the court by claiming it was the expert who was not able to complete his work in a timely fashion.

The third factor addresses the issue of whether a party's failure to comply with the Iowa Rules of Civil Procedure was willful or whether it was the result of a mistake. *Id.* The supreme court has stated:

> "Willfully" and "defying" signal conduct that goes beyond negligent or careless conduct. Such words indicate conduct on the part of the defaulting party showing a deliberate intention to ignore, and resist any adherence to, the rules of procedure. This requirement of willfulness is consistent with our previous holdings that excusable neglect warranting relief from a default excludes conduct amounting to no care, no attention and approaching gross neglect or willful procrastination.

*Id.* A mistake, on the other hand, is caused by poor reasoning, carelessness, or insufficient knowledge. *Id.*

In the case of *Sheeder v. Boyette*, 764 N.W.2d 778, 780 (Iowa Ct. App. 2009), at a hearing on a motion to set aside a default judgment, a litigant claimed he had not appeared for trial because he had not received notice of the trial date. The district court found the litigant was not credible due to the notices and orders sent to the litigant by the clerk of court. *Sheeder*, 764 N.W.2d at 780-81. We determined the litigant had not put forth a credible reason for not attending the scheduled trial and defaulting. *Id.* at 782. We concluded, "Thus, there was no

truthful evidence that Boyette's asserted reason for defaulting was a mistake, such that it could support the district court's finding of excusable neglect." *Id.*

We find the present situation is similar to that found in *Sheeder*. In an affidavit and again at the hearing on the motion to set aside the default decree, Paul testified he did not receive notice of the settlement conferences and trial date because he was working in Minnesota and was unable to get his mail. The district court found this testimony was not credible. Schadt testified, and her office notes supported, she sent notice to Paul after the August 30 hearing of the dates of the settlement conference and the trial. Furthermore, Paul stated he had been home to exercise visitation with the parties' youngest child and according to their visitation schedule this would have included some Mondays and Tuesdays, when he should have been able to retrieve his mail. In addition, even when Paul was working out of the state he was receiving emails from Schadt's office. As in *Sheeder*, 764 N.W.2d at 782, because there was no credible evidence Paul's asserted reason for defaulting was a mistake, the third factor does not support a finding of excusable neglect.

The fourth factor provides that relief from a default judgment should not depend on who made the mistake. *Brandenburg*, 603 N.W.2d at 585. The fourth factor eliminates "any distinction between conduct on the part of the defaulting party versus conduct on the part of the party's insurer or attorney." *Id.* There is no allegation in this case that Paul was treated more harshly because he was the defaulting party, rather than his attorney.

Considering the four factors set out in *Brandenburg*, 603 N.W.2d at 585, we conclude Paul has not shown his failure to attend the settlement conferences

was the result of excusable neglect. "Good cause is a sound, effective, and *truthful* reason. It is something more than an excuse, a plea, apology, extenuation, or some justification, for the resulting effect." *Central Nat'l Ins. Co.*, 513 N.W.2d at 754 (emphasis added). The district court found, and the record supports, Paul was not credible in his testimony concerning his reasons for not attending the settlement conferences and trial. We therefore conclude the district court did not abuse its discretion in determining Paul did not meet his burden to show good cause for the default, such that it should be set aside.

We affirm the decision of the district court denying Paul's motion to set aside the default dissolution decree.[5]

**AFFIRMED.**

---

[5] We note Paul does not challenge the provisions of the default dissolution decree. In the case of *In re Marriage of Huston*, 263 N.W.2d 697, 699 (Iowa 1978), the Iowa Supreme Court first addressed the issue of whether the district court abused its discretion in denying a party's motion to set aside a default dissolution decree and then separately addressed the claim raised on appeal that the default decree was inequitable. *See also Langner v. Mull*, 453 N.W.2d 644, 646-48 (Iowa Ct. App. 1990) (noting two separate issues had been raised—(1) whether the court erred in refusing to set aside a default paternity decree, and (2) whether the physical care provision of the decree was equitable).