# IN THE COURT OF APPEALS OF IOWA

No. 16-1259
Filed February 8, 2017

IN RE THE MARRIAGE OF HEATHER GEHLKEN
AND ROBERT GEHLKEN

Upon the Petition of
HEATHER GEHLKEN,
        Petitioner-Appellee,

And Concerning
ROBERT GEHLKEN,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Story County, Michael J. Moon,

Judge.


        A former husband appeals the district court's denial of his motion to set

aside a default dissolution decree.  **AFFIRMED.**


        James W. Thornton of Thornton & Coy, P.L.L.C., Ames, for appellant.

        Ryan L. Haaland of Davis Brown Law Firm, Ames, for appellee.


        Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

Robert Gehlken appeals the district court's denial of his motion to set aside a default dissolution decree sought by his former wife, Heather Gehlken. Robert argues the district court abused its discretion in finding his default was not due to excusable neglect.[1] Because we find Robert did not meet his burden of showing good cause to set aside the default dissolution decree, we affirm.

## I. Facts and Prior Proceedings

Robert and Heather married in September 2007. They have one child together, A.G., who was born in 2008. On April 18, 2016, Heather filed a petition for dissolution of marriage. A Story County Sheriff's deputy served Robert with the original notice and petition three days later. Robert did not file an answer. On May 12, 2016, Heather sent Robert a notice of intent to seek written application for default judgment. Robert did not respond, and Heather filed an application for entry of default judgment on May 25. On June 27, following a hearing on the application for default judgment, which Robert did not attend, the district court entered a default dissolution decree. The court awarded Heather and Robert joint legal custody of A.G. and placed physical care with Heather.

On July 8, 2016, Robert filed a motion to set aside default judgment, claiming he did not know about the default proceedings until after the district court entered the default dissolution decree. He also maintained he had been

---

[1] Without citation to authority, Robert mentions in passing: "But the evidence would seem to go even further and indicate that the Default should be set aside for mistake and inadvertence, since Robert Gehlken did not understand the legal process and certainly was limited by his educational background." To the extent Robert is asking us to evaluate the issues of mistake and inadvertence independently from the framework expressed in *Brandenburg v. Feterl Mfg. Co.*, 603 N.W.2d 580, 584 (Iowa 1999), we decline to address his argument. *See EnviroGas, L.P. v. Cedar Rapids/Linn Cty. Solid Waste Auth.*, 641 N.W.2d 776, 785 (Iowa 2002); *see also* Iowa R. App. P. 6.903(2)(g)(3).

seeking representation since he received the petition but, due to his financial circumstances, was unable to afford to hire an attorney before the court entered the default decree.

The district court held a hearing on Robert's motion on July 18, 2016. Both Robert and Heather testified. Robert admitted receiving the original notice and petition but claimed he had moved out of the marital home shortly thereafter—between two weeks and one month later—at Heather's request and received no other documents from Heather's attorney or the court.[2] According to Robert, Heather knew his new address, yet her attorney continued to send court filings to the marital home. Robert testified he did not collect his mail from Heather, nor did he ask the U.S. Postal Service to have his mail forwarded until July—after the court had issued the default decree.

In addition, Robert told the court he had not understood the ramifications of failing to respond to the petition and had difficulty finding an attorney to help him. He stated he contacted Legal Aid shortly after he was served, but Legal Aid declined to represent him because his income was too high. Robert said he then called two other law offices but did not meet with an attorney because he could not afford the requested retainers. Robert testified that only after his mother agreed to provide him financial assistance in July could he afford representation.

Heather presented a different account of the events leading up to the default dissolution decree. She testified Robert moved out sometime between May 20 and 25, 2016, several days after her attorney sent Robert the notice of

_____

[2] Robert was unable to recall the exact date he moved. He initially testified he moved "[m]aybe a month after" he was served with the petition but upon prompting from his attorney, revised his assessment to "[a]bout two weeks to a month."

default.[3] Heather asserted Robert had actual notice of the default proceedings. She recounted Robert reading the notice of default aloud to her in the kitchen and later telling her he was planning to attend the default hearing. Heather admitted she knew Robert's new address and informed her attorney of the address change but claimed her attorney continued to send mail to the marital home because "that's where [Robert] was getting his mail." According to Heather, Robert came to the residence almost daily after he relocated to finish packing and to pick up his mail.

Following the hearing, the court denied Robert's motion. Robert now appeals that ruling.

## II.     Scope and Standard of Review

Our review of proceedings to set aside a default judgment is for correction of errors at law. *See* Iowa R. App. P. 6.907. The district court has broad discretion in ruling on a motion to set aside a default judgment, and we will reverse only if we find the court has abused its discretion. *See Cent. Nat'l Ins. Co. of Omaha v. Ins. Co. of N. Am.*, 513 N.W.2d 750, 753 (Iowa 1994). "We are bound by the district court's findings of fact if supported by substantial evidence, and we view the evidence in the light most favorable to the district court's ruling." *Id.* But "[t]he determination of whether a movant has established good cause is not a factual finding; rather, it is a legal conclusion and is not binding on us." *Sheeder v. Boyette*, 764 N.W.2d 778, 780 (Iowa Ct. App. 2009).

---

[3] Heather later told the court the first night Robert spent away from the home was sometime in the beginning of June.

### III. Analysis

A district court may set aside a default judgment "[o]n motion and for good cause shown, and upon such terms as the court prescribes, . . . for mistake, inadvertence, surprise, excusable neglect or unavoidable casualty." Iowa R. Civ. P. 1.977. Good cause requires a sound reason; "[i]t is something more than an excuse, a plea, apology, extenuation, or some justification, for the resulting effect." *Cent. Nat'l Ins. Co. of Omaha*, 513 N.W.2d at 754. Although we prefer "to allow a determination of controversies on their merits," *Brandenburg*, 603 N.W.2d at 584 (citation omitted), we will not vacate a default judgment "when the movant has ignored the rules of procedure with ample opportunity to abide by them." *Sheeder*, 764 N.W.2d at 780.

When deciding whether excusable neglect rises to the level of good cause to set aside a default judgment, we consider (1) whether the defaulting party actually intended to defend, (2) whether the party asserted a good faith claim or defense, and (3) whether the party willfully ignored or defied the rules of procedure rather than defaulting as the result of a mistake. *See Brandenburg*, 603 N.W.2d at 584. Our determination does "not depend on who made the mistake"; we make no distinction between the conduct of the defaulting party and the conduct of the party's insurer or attorney. *See id.* at 584–85. The defaulting party bears the burden of demonstrating good cause. *Id.* at 584.

The crux of the parties' arguments revolve around the resolution of the third *Brandenburg* factor: whether Robert's default was the result of his willful defiance of the rules of procedure or simply a mistake. *See id.* The words "willfully" and "defying" indicate "conduct that goes beyond negligent or careless

conduct. Such words indicate conduct on the part of the defaulting party showing a deliberate intention to ignore, and resist any adherence to, the rules of procedure." *Id.* at 585. A defaulting party's failure to demonstrate the default was the result of a mistake rather than willful defiance or ignorance is fatal to a claim of excusable neglect.[4] *See Sheeder*, 764 N.W.2d at 780.

Robert makes three arguments in support of his claim of mistake. First, Robert contends because of his "limited education" and lack of experience with the court system, he didn't understand the contents of the original notice, including his obligation to respond. Second, he asserts he attempted to retain an attorney immediately after being served but was unable to afford one before the court entered the default dissolution decree. Third, Robert claims he did not receive notice of the default proceedings.

Heather responds that substantial evidence in the record demonstrates Robert willfully ignored the rules of procedure. Heather argues Robert knew he was required to respond to the original notice and petition, which he demonstrated by contacting law offices to seek representation after he was served. But she also characterizes Robert's efforts at seeking representation as minimal, noting: "Three phone calls are the sum total of [Robert's] attempts to assert his interests in this case. It was only after being arrested for domestic abuse that [Robert] retained his present attorney."[5] Lastly, Heather urges us to

---

[4] Because we find the default was a result of Robert's willful disregard of the rules of procedure, we find it unnecessary to consider the other *Brandenburg* factors.

[5] Robert was arrested for domestic-abuse assault on July 1, 2016. He retained an attorney soon after to represent him in both the criminal matter and the dissolution proceedings.

defer to the district court's credibility determinations and find Robert moved out of the marital home only after receiving her May 12 notice of default.

We conclude the district court did not abuse its discretion in determining Robert failed to meet his burden of proving good cause to set aside the default dissolution decree. We are unconvinced by the claim Robert, who is a high school graduate, did not understand the contents of the original notice. As the district court explained, "the original notice . . . clearly states that [Robert] must take some action with respect to the filing of the petition within [twenty] days in order to protect his interests. He obviously understood that obligation as he contacted Legal Aid to seek representation." Nor do we find Robert's lack of familiarity with the legal system sufficient to demonstrate excusable neglect. *See, e.g.*, *In re Marriage of Dorland*, No. 16-0132, 2016 WL 6652367, at *3 (Iowa Ct. App. Nov. 9, 2016) ("A lack of understanding as to the legal process will not 'excuse one from taking affirmative action to obtain an understanding and an attempt to appear as required.'" (quoting *Haynes v. Ruhoff*, 157 N.W.2d 914, 918 (Iowa 1968))).

Neither do we find Robert's difficulty in retaining counsel amounts to more than an "excuse" or "extenuation." In the approximately two months between the time he was served with the dissolution petition and the entry of the default dissolution decree, Robert reportedly made three telephone inquiries concerning legal representation. He did not meet with any attorneys, he did not continue to contact law firms after determining he could not afford the retainer quoted by the two private firms he contacted, and he did not contact Heather's attorney or the district court to seek more time to retain counsel or to move forward without

representation. We agree with the district court's assessment that Robert's "inactivity does not constitute a reason cognizable in law for setting aside a default."

Finally, we reject Robert's assertion he did not receive Heather's notice of default. While the court heard conflicting testimony about whether Robert received the notice, the district court credited Heather's more specific testimony on the issue. We defer to that credibility determination. *See In re Marriage of Gensley*, 777 N.W.2d 705, 713 (Iowa Ct. App. 2009) (recognizing the district court has the opportunity to "listen to and observe the parties and witnesses" and giving weight to the district court's credibility determinations).

Overall, the record demonstrates Robert understood his procedural obligations yet chose to ignore them. Allowing Robert to set aside the default judgment under these circumstances would "reward his deliberate neglect of this case." *See, e.g.*, *Dorland*, 2016 WL 6652367, at *4. Accordingly, we affirm.

**AFFIRMED.**