# IN THE COURT OF APPEALS OF IOWA

No. 18-1496
Filed August 21, 2019

IN RE THE MARRIAGE OF CASSIDY R. VANDERBILT
AND AARON M. VANDERBILT

Upon the Petition of
CASSIDY R. VANDERBILT,
    Petitioner-Appellee,

And Concerning
AARON M. VANDERBILT,
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Bremer County, DeDra L. Schroeder,

Judge.


A former husband appeals the district court's denial of his motion to set

aside a default dissolution decree. **AFFIRMED**.


Robert J. Murphy, Dubuque, for appellant.

Terry D. Parsons of Olsen & Parsons Law Firm, Cedar Falls, for appellee.


Considered by Vaitheswaran, P.J., and Tabor and May, JJ.

**TABOR, Judge.**

The district court refused to set aside the default decree dissolving the marriage of Aaron and Cassidy Vanderbilt. Aaron appeals, contending he was "misled by his spouse and her attorney." He claims he did not receive notice of default because he moved out of state and had no access to a computer. The district court did not find Aaron's excuses credible. Deferring to those credibility findings, we affirm.

## I.    Facts and Prior Proceedings

Cassidy and Aaron married in 2012. They have one child, Z.V., born in 2013. Cassidy petitioned for divorce in late December 2017. Just before Cassidy filed her petition, she and Aaron met for a settlement conference at the office of Cassidy's attorney, Jill Dillon. Dillon explained the parties were trying to resolve issues of custody and support before Aaron moved to Colorado. Dillon told Aaron at the conference she was representing Cassidy.[1] Aaron did not have his own lawyer.

Aaron accepted service of the petition and original notice in January 2018. When Aaron did not file an answer, the district court set a default-judgment hearing for April 23, 2018. When Aaron did not appear for that hearing, the court entered a default decree dissolving the Vanderbilts' marriage. The decree granted Cassidy physical care of Z.V. with reasonable visitation for Aaron. The decree also ordered Aaron to pay $557 each month in child support. The Child Support Recovery Unit issued an income-withholding order for Aaron in early May 2018.

---

[1] Dillon withdrew from her representation of Cassidy before the hearing on Aaron's motion to set aside the default decree.

The next month, as a self-represented litigant, Aaron filed a "complaint to the court" alleging attorney Dillon conducted a "deceptive mediation" at her office in December 2017. Aaron claimed he did not know Dillon represented Cassidy. He also asserted he could not check the e-filing system for several months after his move to Colorado because he had no access to a computer. Aaron also filed a belated answer to the dissolution petition as well as a motion for temporary custody and visitation.

The district court set a July 2018 hearing on whether the default decree should be set aside under Iowa Rule of Civil Procedure 1.977. Cassidy had new counsel at the hearing. Aaron remained self-represented. He testified he was unaware of the April default hearing. But under cross examination, he acknowledged receiving the petition and original notice. The original notice warned of possible default if he did not submit an answer within twenty days.

In support of her position, Cassidy offered a text-message exchange with Aaron from mid-January 2018 in which he said, "Got the papers today." She responded, "Yeah I think those just say you're agreeing to proceed right??" He asked, "Yes, do you know if I have to get notarized?" And Cassidy answered, "Well I think she already did when we met with her last." Aaron questioned the authenticity of the exhibit, testifying he believed Cassidy or attorney Dillon fabricated those texts.

Cassidy submitted exhibits showing both the clerk of court and her attorney sent Aaron notice of the default hearing. The clerk testified she had not received a return notice that the mail was undeliverable. Attorney Dillon testified she sent

that notice to Aaron on March 19 at his Aurora, Colorado address.[2]  But Aaron testified he did not receive that notice because he had three addresses, two in Colorado and one in Utah, since moving from Iowa.  Aaron acknowledged receiving other mail from attorney Dillon, including a stipulation sent in April 2018, just not the notice of default.

As for setting up an e-filing account, Aaron testified he did not have internet access until April 22, 2018—a day before the default hearing.  Aaron testified he could establish a user name and password but was "very confused about what to do" because two case numbers were linked to the dissolution case.

In rejecting Aaron's motion to set aside the default decree, the district court bluntly held, "The Respondent's testimony and claims are not credible."  Now represented by counsel, Aaron challenges the court's application of rule 1.977.

## II.    Scope and Standards of Review

The district court enjoys broad discretion in ruling on a motion to set aside a default judgment under rule 1.977.  *Brandenburg v. Feterl Mfg. Co.,* 603 N.W.2d 580, 584 (Iowa 1999) (interpreting then Iowa Rule of Civil Procedure 236).  We will only reverse if the court abused that discretion.  *Id.*  If supported by substantial evidence, the district court's factual findings bind our decision.  *Id.*

The movant—here, Aaron—must establish good cause under the rule.  *Id.* The rule lists these grounds for good cause: "mistake, inadvertence, surprise, excusable neglect or unavoidable casualty."  Iowa R. Civ. P. 1.977.  Distinct from its factual findings, the district court's determination Aaron did not establish good

---

[2] Aaron acknowledged during cross examination that was his correct address on that date.

cause is a legal conclusion, not binding on us. *See Sheeder v. Boyette*, 764 N.W.2d 778, 780 (Iowa Ct. App. 2009).

We also are more willing to interfere with the district court's denial of a motion to set aside a default judgment than with its grant. *Brandenburg*, 603 N.W.2d at 584. That difference reflects our supreme court's view that rule 1.977 aims to afford parties a determination on the merits of the controversy. *See id.*

## III.    Good Cause

Aaron contends he showed good cause for setting aside the default decree. Case law describes "good cause" as a "sound, effective, and *truthful reason*" for not complying with the procedural rules. *Sheeder*, 764 N.W.2d at 780. Good cause must be "something more than an excuse, a plea, apology, extenuation, or some justification, for the resulting effect." *Id.*

Truthfulness is crucial to Aaron's quest to undo the default decree. Yet the district court did not believe his testimony. To illustrate, the court found

> [Aaron's] claims that he received certain mailings but not others at the address where he claimed to live are without credibility. It seems unusual that [Aaron] would receive certain mailings but not the most crucial of these. [Aaron's] claim that the text messages were fabricated simply does not appear credible.

Ignoring those stark credibility findings on appeal, Aaron relies on *Brandenburg* for overturning his default judgment. 603 N.W.2d at 585. Under that case, we consider four criteria: (1) Whether the defaulting party intended to defend; (2) If the defaulting party asserted a claim or defense in good faith; (3) Whether the defaulting party willfully ignored or defied the rules of procedure, or the default

simply the result of a mistake; and (4) Whether relief is warranted does not depend on who made the mistake.[3]  *Id.*

On the first factor, Aaron asserts we should view his "complaint to the court"—filed without an attorney—as a motion to overturn the default decree.  He argues that filing, about one month after the default decree, reflected his intent to defend.  *See Cent. Nat'l Ins. Co. of Omaha v. Insurance Co. of N. Am.*, 513 N.W.2d 750, 756 (Iowa 1994) (measuring intent to defend by a party's prompt move to set aside the default).  On the second factor, he contends his belated answer and motion for temporary custody and visitation showed he was asserting a claim in good faith.  On the third factor, Aaron contends "he did not just let things slide." He admits he was "in communication" with Cassidy but claims he was confused by the case numbers on the stipulations he received.  Aaron insists he was unaware he signed an acceptance of service and never received the default notice.

The district court doubted Aaron's satisfaction of the first factor, calling his intent to defend "nothing more than a bald assertion."  The court noted Aaron offered no testimony that he relied on representations by Cassidy or her counsel that Cassidy was not seeking a divorce or not pursuing a divorce "in the fashion which had been pled."

To be sure, we share the district court's skepticism about Aaron's intent to defend in the dissolution proceeding.  But even if we assume Aaron satisfied the first and second *Brandenburg* factors, his defiance of the procedural rules remains

---

[3] This fourth factor is not a point of debate because Aaron was self-represented.

problematic. Aaron failed to timely serve an answer as required by rule 1.971(2). And he failed to appear for the default trial of the dissolution.

The district court disbelieved Aaron's reason for not appearing. We give weight to that credibility determination. *See In re Marriage of Gensley*, 777 N.W.2d 705, 713 (Iowa Ct. App. 2009) (recognizing the trial judge has the opportunity to "listen to and observe the parties and witnesses"). Without a truthful reason for his noncompliance, Aaron cannot succeed on his motion to set aside the default. "A movant cannot prove any of the grounds enumerated in the rule based upon an untruth." *Sheeder*, 764 N.W.2d at 782.

Although we prefer to allow "determination of controversies on their merits," *Brandenburg*, 603 N.W.2d at 584 (quoting *Whitehorn v. Lovik*, 398 N.W.2d 851, 853 (Iowa 1987)), we will not vacate a default judgment "when the movant has ignored the rules of procedure with ample opportunity to abide by them." *Sheeder*, 764 N.W.2d at 780. The record shows Aaron understood his procedural obligations yet chose to ignore them. Allowing Aaron to set aside the default judgment under these circumstances would "reward his deliberate neglect of this case." *See In re Marriage of Dorland*, No. 16-0132, 2016 WL 6652367, at *4 (Iowa Ct. App. Nov. 9, 2016).

## IV. Appellate Attorney Fees

Cassidy asks for $3000 in attorney fees for defending this appeal. She cites the disparity of their incomes. The default decree lists Cassidy's income as $20,488 and Aaron's income as $37,440. We have discretion to order Aaron to pay attorney fees for Cassidy where he appealed from a denial of his request to vacate a default decree. *See In re Marriage of Short*, 263 N.W.2d 720, 723 (Iowa

1978).  But without more information about the parties' relative abilities to pay, we direct the parties to shoulder their own costs of representation.  By contrast, we tax the costs of the appeal to Aaron.

**AFFIRMED.**