CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA, A Nebraska Corporation, Appellant,

v.

INSURANCE COMPANY OF NORTH AMERICA, A Pennsylvania Corporation, and Employers Reinsurance Corporation, A Missouri Corporation, Appellees.

No. 92–1764.

Supreme Court of Iowa.

March 23, 1994.

Jeffrey A. Boehlert and Ronald M. Rankin of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for appellant.

Richard G. Santi, Randall H. Stefani and Michael J. Eason of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellee Ins. Co. of North America.

John M. Wharton and Joseph M. Barron of Peddicord, Wharton, Thune & Spencer, P.C., Des Moines, for appellee Employers Reinsurance Corp.

Considered by LARSON, P.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.

LAVORATO, Justice.

Central National Insurance Company of Omaha (CNI) obtained a default judgment against parties insured by Insurance Company of North America (INA) and Employers Reinsurance Corporation (Employers). When the judgment was not satisfied, CNI sued INA and Employers to recover on their policies under Iowa Code chapter 516. Employers answered within the time allowed by the rules; INA did not. In due time, CNI obtained a default judgment against INA. Shortly thereafter, INA moved to set aside the default. The district court granted INA's motion, finding that CNI had obtained the default in violation of local custom and practice.

Ultimately, the district court granted INA's motion for summary judgment. The court concluded there was no coverage for the acts that led to the judgment against INA's insureds.

The claim against Employers was tried to the court which found against CNI. The court determined there was no coverage because no notice of the claims against Employers' insureds was given to Employers during the policy period as allegedly required by Employers' claims made policy.

CNI appealed from the default and summary judgment rulings in favor of INA. CNI also appealed from the judgment in favor of Employers.

At oral arguments, CNI's counsel conceded that our recent decision in *Hasbrouck v. St. Paul Fire & Marine Ins. Co.,* 511 N.W.2d 364, 367 (Iowa 1993), disposes of CNI's appeal from the judgment in favor of Employers. According to *Hasbrouck,* a prerequisite to coverage under a claims made policy is that the insured report a claim to the insurer while the policy is in effect. *Hasbrouck,* 511 N.W.2d at 367. So we give no further consideration to the appeal involving Employers and affirm the judgment in its favor.

Because we conclude the district court abused its discretion in setting aside the default against INA, we reverse the ruling on the default. For reasons stated later in this opinion, we remand for further proceedings on the default issue.

Frank E. Duncan and Gary Bailey were the sole shareholders, directors, and owners of four different corporations: (1) Church Insurance Consultants, Inc. (Church), (2) Action Insurance Agency (Action), (3) Insurance Marketing Service, Inc. (Insurance Marketing), and (4) Iowa Underwriters, Inc. In early 1984 Church entered into an agreement with CNI. Under the agreement, Church agreed to (1) sell and write insurance for CNI to religious institutions and organizations, (2) collect premiums, and (3) provide certain services to policyholders.

On February 1, 1984, INA issued a "Comprehensive Crime Policy" to Church. The policy period was from February 1, 1984, to February 1, 1985. Among the riders attached to the policy was one adding Action, Insurance Marketing, and Iowa Underwriters, Inc. as insureds.

Church and the other three corporations—Action, Insurance Marketing, and Iowa Underwriters, Inc.—went out of business before June of 1985. In June 1985 CNI filed a

petition against Duncan and Bailey individually, and the four corporations just mentioned. The petition alleged claims for, among other things, (1) negligence, (2) breach of contract, and (3) fraud. The petition sought compensatory damages for (1) premiums allegedly not remitted by Church, and (2) losses allegedly paid on risks underwritten in violation of underwriting guidelines established by an underwriter who was the administrator for CNI of the agreement with Church. The petition also sought punitive damages. Because Church and the other three corporations were by now defunct, only Duncan and Bailey defended.

CNI ultimately obtained a default judgment against Church, Action, Insurance Marketing, and Iowa Underwriters, Inc. The judgment included $384,651.63 in compensatory damages and $100,000 in punitive damages. This judgment was not satisfied. The case against Duncan and Bailey individually is still pending.

CNI presented its claims against the four judgment debtor corporations under the INA policy. INA believed there was no coverage for the acts complained of under its liability policy and, through its local counsel, refused to defend.

When CNI's demands for satisfaction went unsatisfied, CNI filed the present action for damages against INA. INA was served with the original notice and petition when its agent—the Iowa insurance commissioner—accepted service on July 17, 1986. The commissioner then sent the papers by certified mail to INA's home office in Philadelphia. The home office received the papers and had ample time under the rules to answer. But apparently the individual who received them erroneously believed these papers pertained to CNI's action against the four judgment debtor corporations. As a result he took no further action.

CNI moved for default because of INA's failure to move or answer. The district court granted the motion on August 18 and set a hearing on damages for September 19.

Meanwhile, INA's Des Moines claims manager learned on August 29 that INA's home office had received a certified copy of the August 18 order for default. He immediately investigated and discovered that CNI had indeed filed suit against INA. He promptly contacted INA's local counsel.

On September 3 INA filed a motion to set aside the default, which CNI resisted. The district court set aside the default following a hearing.

INA then answered and moved for summary judgment on the grounds there was no coverage. The district court agreed and sustained the motion.

CNI appealed from the district court's order setting aside the default and the order granting INA's motion for summary judgment. Because we reverse and remand on the default issue, we limit our discussion to it.

■ I. Iowa Rule of Civil Procedure 236 provides that

[o]n motion and for good cause shown, and upon such terms as the court prescribes, but not ex parte, the court may set aside a default or the judgment thereon, for mistake, inadvertence, surprise, excusable neglect or unavoidable casualty. Such motion must be filed promptly after the discovery of the grounds thereof, but not more than sixty days after entry of the judgment. Its filing shall not affect the finality of the judgment or impair its operation.

A proceeding under this rule is at law. *Williamson v. Casey,* 220 N.W.2d 638, 639 (Iowa 1974).

■ We vest district courts with broad discretion in ruling on a motion to set aside a default. We reverse such a ruling only if this discretion is abused. Generally, we find such an abuse only when there is a lack of substantial evidence to support the district court's ruling. *Paige v. City of Chariton,* 252 N.W.2d 433, 437 (Iowa 1977). We are bound by the district court's findings of fact if supported by substantial evidence, and we view the evidence in the light most favorable to the district court's ruling. *Flexsteel Indus., Inc. v. Morbern Indus. Ltd.,* 239 N.W.2d 593, 596 (Iowa 1976). We will uphold the district court's ruling even when the court has made no findings of fact or based its ruling entirely

on a different ground. *Paige,* 252 N.W.2d at 437. We are more reluctant to interfere with the grant of a motion to set aside a default than with its denial. *Insurance Co. of N. Amer. v. Sperry & Hutchison Co.,* 168 N.W.2d 753, 756 (Iowa 1969).

■ If there is no factual issue, the question is one of law. In these circumstances, we are not bound by the determination of the district court. *Whitehorn v. Lovik,* 398 N.W.2d 851, 853 (Iowa 1987).

■ The burden is on the movant to plead and prove good cause under the rule. The movant establishes good cause only if one of the grounds in the rule is proved. *Flexsteel,* 239 N.W.2d at 596.

■ Good cause is a sound, effective, and truthful reason. It is something more than an excuse, a plea, apology, extenuation, or some justification, for the resulting effect. Good cause also requires at least a claimed defense asserted in good faith. *Id.* (citations omitted).

■ II. With these principles in mind we turn to the record in this case. In its motion to set aside the default INA alleged, among other things, that CNI's "[counsel] failed to notify counsel for [INA] of his belief that [INA] was in default and provide [INA] an opportunity to appear in accord with the custom and practice generally followed by attorneys practicing in Polk County, Iowa." In support of this allegation, INA attached an affidavit of Kent Forney, a trial attorney in Polk County for the past twenty-eight years. The affidavit pertinently stated:

I am acquainted with the generally recognized local custom and practices observed by the members of the bar in Des Moines, Polk County, Iowa.

It is one of the local customs and practices that if a plaintiff's attorney knows a certain defendant is regularly represented by a specific lawyer or law firm who has been previously involved in the matter, no default judgment will be taken against the defendant without prior notification by the plaintiff's attorney to the lawyer or law firm who regularly represents that defendant.

As to this allegation, the district court made several findings of fact summarized as follows. On August 2, 1985, Jeffrey A. Boehlert, counsel for CNI, called H. Richard Smith whose firm was representing INA. Boehlert told Smith that (1) he knew Smith's firm represented INA; (2) he—Boehlert—was preparing to take a default on behalf of CNI against Church, Action, Insurance Marketing, and Iowa Underwriters, Inc.; and (3) he wanted to give Smith an opportunity to appear on behalf of Church and the other corporations. Smith told Boehlert that INA's position was that its policy afforded no coverage for the claims on which the action against Church and the other three corporations was based. In the present proceeding, Boehlert never notified Smith of CNI's intention to take a default against INA. Nor was Smith ever advised before the default that CNI had sued INA.

After referring to the local custom and practice about defaults in Forney's affidavit, the district court went on to say:

[CNI] argues that it is not required to go beyond the rules and check Martindale Hubbell or some other legal directory to see who represents a particular defendant in a case before taking a default. That is true. But the facts in this particular case go beyond that. [INA's] counsel, though it had no notice of the filing of the instant case, had been involved in the matter of the claims against Church, et al. and the fact that [CNI] claimed that INA provided insurance coverage for their asserted claims. [CNI's] counsel should have notified [INA's] counsel of [CNI's] intention to take a default before doing so. The default should be set aside.

As much as these facts cry out for relief, we reluctantly agree with CNI that, as presently interpreted, rule 236 affords no relief.

Before rule 236 was adopted, this court decided *Lunt v. Van Gorden,* 225 Iowa 1120, 281 N.W. 743 (1938). The court had before it a statute that allowed a judgment to be vacated "[f]or unavoidable casualty or misfortune preventing the party from prosecuting or defending." *Id.* at 1123, 281 N.W. at 745. On that ground this court set aside a default taken in violation of a local custom and prac-

tice requiring notice to opposing counsel—who have appeared—before a default is taken. Violation of such a custom and practice can—this court held—constitute an "unavoidable casualty or misfortune preventing the party from prosecuting or defending." *Id.* at 1123–25, 281 N.W. at 745–46. The crux of the holding was the opposing attorney's *reliance* on the custom and practice:

[Opposing counsel] believed he would be informed of any such intention on [the] part of plaintiffs' counsel, and was without warning that the general custom shown in the evidence was to be abrogated.... If [opposing counsel] was at fault in relying upon the general custom and practice of attorneys in Mahaska district court, long observed between himself and [the plaintiffs' counsel], it was in failing to anticipate that without warning his confidence would be nullified by those in whom it had been reposed, and who must have known it had been a confidence of full measure and of long standing. Upon the whole record it would be a sorry commentary upon the ethics of an honorable profession to hold that a duty rested on [opposing counsel] to anticipate a happening of such character.

*Id.* at 1128–29, 281 N.W. at 747–48.

■ Rule 236 also allows a default to be set aside for "unavoidable casualty." "Unavoidable casualty" for rule 236 purposes means

some casualty or misfortune growing out of conditions or circumstances that prevented the party or his attorney from doing something that, except therefor, would have been done....

*Flexsteel*, 239 N.W.2d at 596 (citations omitted). Clearly, the local custom and practice factual scenario of *Lunt* is covered under this ground. *See also* Iowa Code of Professional Responsibility for Lawyers DR 7–106(C)(5) (lawyer shall not fail to comply with known local customs of courtesy or practice of the bar or a particular tribunal without giving opposing counsel timely notice of his intent not to comply). As in *Lunt*, the key in the *Flexsteel* definition of "unavoidable casualty" is reliance by the party or the party's attorney.

The facts here are undisputed. Our question then is one of law. Do the facts fall within the *Flexsteel* definition of "unavoidable casualty"? Regrettably, they do not. Smith failed to answer CNI's petition because he did not know CNI had sued his client, not because of his reliance on the local custom and practice. INA failed to forward the notice and petition to Smith because the employee who received them in Philadelphia apparently erroneously believed they pertained to CNI's action against the four judgment debtor corporations and not to INA. Such failure was not because of any reliance by INA on the local custom and practice. As a matter of law the undisputed facts do not meet the definition of "unavoidable casualty" in rule 236.

III. In addition to local custom and practice, INA relied on "excusable neglect." The district court rejected it, finding that INA did not advance any set of facts which would suggest excusable neglect. The only explanation INA gave was that its employee who received the notice and petition erroneously believed that the papers pertained to the case against Church and the other three corporations and not INA.

Given the present state of the law on "excusable neglect" the district court was correct. In the past, more liberality has been shown in granting relief when the mistake is that of an attorney or insurer rather than of the litigant alone. *Compare Flexsteel*, 239 N.W.2d at 598–99 (default set aside where the defendant's insurer misunderstood original notice); *Edgar v. Armored Carrier Corp.*, 256 Iowa 700, 705–07, 128 N.W.2d 922, 925–26 (1964) (default set aside where notice was lost or mislaid by defendant's liability insurer); *Hobbs v. Martin Marietta Co.*, 257 Iowa 124, 132, 131 N.W.2d 772, 777 (1964) (default set aside where defendants forwarded suit papers to insurer but failed to check whether insurer received them); *Handy v. Handy*, 250 Iowa 879, 885, 96 N.W.2d 922, 926 (1959) (default set aside where default was due to trial counsel's failure to appear at time set for trial) *with Madsen v. Litton Indus., Inc.*, 498 N.W.2d 715, 718 (Iowa 1993) (defendant's mistaken belief that personal injury case was already in litigation because of mislabeling of

file did not excuse defendant's failure to respond to original notice served, as required to set aside resulting default judgment); *Haynes v. Ruhoff*, 261 Iowa 1279, 1286, 157 N.W.2d 914, 917–18 (1968) (defendant's confusion as to import of notice not grounds to set aside default judgment).

In recent times the interpretation given to "excusable neglect" has been challenged as too narrow. *See Madsen*, 498 N.W.2d at 718 (Andreasen, J., dissenting); *First Nat'l Bank v. Claiser*, 308 N.W.2d 1, 3 (Iowa 1981) (Uhlenhopp, J., dissenting). In *First Nat'l Bank*, Justice Uhlenhopp in his dissent gave these cogent reasons why our approach was wrong:

I think we should reexamine the rationale of our decisions under rule 236. When the party against whom a default is entered actually desires to prosecute his claim (if a plaintiff) or to present his defense (if a defendant), the default frequently constitutes a windfall for the other party; the latter party might not be able to prevail if the case were heard on the merits. Moreover, with the default set aside, often the latter party is no worse off, on the merits of the case, than if the default had not been entered. The loser, however, is deprived of his claim or defense without trial, irrespective of its merits.

I do not refer to the case in which a party willfully ignores the rules of procedure or defies them. I refer to the cases involving bungles. Rule 236 does not contemplate a blameless party; it *contemplates* that some fault actually exists; it allows relief for "neglect," if the neglect is "excusable." If the neglect is so culpable as to be inexcusable, the guilty party can have no relief.

The federal courts grant relief quite readily in order to get to the merits and avoid harsh results. I would adopt the rationale of decisions of this kind [allowing relief for mistake, inadvertence, surprise, or excusable neglect under liberal interpretation of Federal Rule of Civil Procedure 60(b)(1) resolving doubts in favor of setting aside judgment so that case may be tried upon merits], and grant relief in the present case.

*First Nat'l Bank*, 308 N.W.2d at 3–4 (Uhlenhopp, J., dissenting) (emphasis in original) (citations omitted).

What happened in the case before us could easily be characterized as a "bungle" if the explanation given is accepted as true. In addition, a denial of relief in this case would award CNI a windfall in excess of $450,000 if the district court's ruling on INA's motion for summary judgment is correct. Moreover, if we continue to apply a strict interpretation of "excusable neglect" we encourage violations of local custom and practice similar to what happened here.

■ In determining "excusable neglect" constituting good cause, the district court should now focus on four factors. First, did the defaulting party actually intend to defend? Whether the party moved promptly to set aside the default is significant on this point. Second, does the defaulting party assert a claim or defense in good faith? Third, did the defaulting party willfully ignore or defy the rules of procedure or was the default simply the result of a mistake? Last, whether relief is warranted should not depend on who made the mistake.

As we recently stated, "the purpose of rule 236 is to allow determination of controversies on their merits rather than on the basis of nonprejudicial inadvertence or mistake." *Whitehorn*, 398 N.W.2d at 853 (citations omitted). Taking a liberal approach in interpreting inadvertance or mistake advances this principle.

We reverse the district court's ruling on the default. We retain jurisdiction but remand for the limited purpose of allowing the district court to determine whether there was excusable neglect constituting good cause. *See* Iowa R.App.P. 12(g). The district court shall take additional evidence on this issue and shall apply the four factors we set out above. After considering the additional evidence, the district court shall enter its order either granting or denying the motion to set aside the default.

The parties shall file a copy of the transcript of additional evidence and the district court's order with the clerk of our court no later than thirty days after this opinion is

filed. The parties shall not file additional briefs unless this court requests them.

IV. There is no more troublesome problem to practicing lawyers today than the decision whether to take a default without notice to opposing counsel. As one writer points out, "[t]he law of default judgments is rich with debate concerning professional courtesy." Andrew R. Herron, *Collegiality, Justice, and the Public Image: Why One Lawyer's Pleasure is Another's Poison,* 44 U. Miami L.Rev. 807, 824 (1990). There are two schools of thought on this question. One school considers notice in such circumstances as a common courtesy that should be extended. The other school believes that absolute loyalty to the client is paramount and considers such a notice as a conflict of interest. *Id.* at 824.

This is just part of a growing problem of professionalism sweeping this country in which overzealousness has resulted in a bad image for lawyers. Some courts are attempting to resolve the problem by mandating professional courtesy codes. We cited one example recently. *See Vlotho v. Hardin County,* 509 N.W.2d 350, 353 (Iowa 1993) (proposed standards for professional conduct within the seventh federal judicial circuit).

Perhaps it is time for this court to take the lead in this state and do likewise. As for now, we can perhaps avoid the problems that "bungles" cause and make our default rule more fair and consistent by requiring notice before a default is taken. This can be done by amendment to rule 236. Notice to all defaulting parties—not just those represented by counsel—should be given. One state has done just that. *See* Pa.R.Civ.P. 237.1 (ten days notice of intent to take default required). The rule was adopted on recommendation of the Pennsylvania Superior Court.

**AFFIRMED AS TO EMPLOYERS REINSURANCE CORPORATION; REVERSED AND REMANDED AS TO INSURANCE COMPANY OF NORTH AMERICA.**