# IN THE COURT OF APPEALS OF IOWA

No. 20-0789
Filed February 3, 2021

IN RE THE MARRIAGE OF ASHLEY DIAZ-DOOLIN
AND DAMU ODENTE DIAZ-DOOLIN

Upon the Petition of
ASHLEY DIAZ-DOOLIN, n/k/a/ ASHLEY GRIMM,
        Petitioner-Appellee,

And Concerning
DAMU ODENTE DIAZ-DOOLIN,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Fae Hoover Grinde,

Judge.


        A father appeals the district court order denying his motion to set aside entry

of default against him and modifying the terms of his dissolution of marriage

decree.  **AFFIRMED.**


        Rebecca Feiereisen of Trent Law Firm, PLLC, Cedar Falls, for appellant.

        Dawn D. Long of Howes Law Firm, P.C., Cedar Rapids, for appellee.


        Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

A father appeals the district court order denying his motion to set aside the default entered against him following his failure to appear at a pretrial conference. He further argues the mother did not meet her burden to show modification of the provisions regarding physical care of the children was warranted.

## I.    Background

The parties were divorced via entry of a decree of dissolution of marriage in March 2017.  The decree granted the parents joint legal custody and joint physical care of their two minor children, N.D. and G.D.  Seven months later, the mother filed a petition to modify the dissolution decree, requesting physical care of the children.  The father, as a self-represented litigant, filed an answer.  After normal scheduling procedures took place, a pretrial conference was set for June 26, 2019, and a trial was set for August 14, 2019.  The father failed to appear for the pretrial conference.  In response, the district court found the father in default and barred him from presenting evidence in the event he appeared for the modification trial.  Waiting nearly a month and a half and until two days before trial, the father, still unrepresented by counsel, filed a motion to continue the trial on the basis he needed additional time to hire counsel.  The district court denied the motion the next day.

The morning of trial, newly-retained counsel for the father filed a motion to vacate the default judgment.  The district court held a hearing on the father's motion before the modification trial began.  The father presented no evidence at the hearing.  The district court denied the motion, but the court permitted the father to testify and cross-examine the mother and her witnesses.  The case proceeded

to trial. Following trial, the district court issued a ruling granting the mother's petition for modification and placed physical care of the children with the mother. The father appeals.

## II.     Standards of Review

"In ruling on a motion to set aside a default judgment, the district court is vested with broad discretion and will only be reversed if that discretion is abused." *Sheeder v. Boyette*, 764 N.W.2d 778, 780 (Iowa Ct. App. 2009).

We review marriage-dissolution proceedings de novo. *In re Marriage of Larsen*, 912 N.W.2d 444, 448 (Iowa 2018). "Although we give weight to the factual findings of the district court, we are not bound by them." *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). When assessing witness credibility, "[t]here is good reason for us to pay very close attention to the trial court's assessment." *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984). "We will disturb the district court ruling 'when there has been a failure to do equity.'" *In re Marriage of Kimbro*, 826 N.W.2d 696, 698 (Iowa 2013) (quoting *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005)). Our overriding concern is the children's best interest. Iowa R. App. P. 6.904(3)(o).

## III.     Discussion

### A.     Default Judgment

The first issue we address is the district court's refusal to set aside the default judgment against the father. The district court may set aside a default judgment "[o]n motion and for good cause shown" based on a showing of "mistake, inadvertence, surprise, excusable neglect or unavoidable casualty." Iowa R. Civ. P. 1.977. "A determination of whether a movant has established good cause is not

a finding of fact; rather, it is a legal conclusion, which is not binding." *Brandenburg v. Feterl Mfg. Co.*, 603 N.W.2d 580, 584 (Iowa 1999). Good cause requires "something more than an excuse, a plea, apology, extenuation, or some justification, for the resulting effect." *Sheeder*, 764 N.W.2d at 780 (quoting *Cent. Nat'l Ins. Co. of Omaha v. Ins. Co. of N. Am.*, 513 N.W.2d 750, 754 (Iowa 1994)).

The father focuses on excusable neglect as the reason for his failure to appear for the pretrial conference. When considering whether a default judgment should be set aside for excusable neglect, we contemplate four factors:

> (1) whether the defaulting party actually intended to defend; (2) whether the defaulting party asserted a claim or defense in good faith; (3) whether the defaulting party willfully ignored or defied the rules of procedure or was the default simply the result of the mistake; and (4) whether relief is warranted should not depend on who made the mistake.

*Sheeder*, 764 N.W.2d at 781. The third factor contemplates conduct "showing a deliberate intention to ignore, and resist and adherence to, the rules of procedure." *Brandenburg*, 603 N.W.2d at 585.

The father has failed to show excusable neglect. The father points to his other efforts in litigating the modification action and his actions after learning he was in default to show he intended to defend. While the father may have intended to defend, his assertions ignore his repeated failures to abide by the district court's earlier orders. As the district court noted in its order on the modification, the father was found to have defaulted earlier in the proceedings when he failed to file a timely answer. That default was set aside. In addition to failing to file a timely answer, the father similarly failed to file an affidavit of financial status, child support worksheets, or witness or exhibit lists, despite being ordered to do so. Based on

this record, we are persuaded the father willfully ignored or defied the rules of procedure.

We also note the father's motions to continue and to vacate the default offer no explanation as to why he failed to appear apart from asserting that a "mistake or inadvertence" occurred. The father presented no evidence or explanation for why he failed to appear apart from his own testimony at the modification trial—given after the district court had already denied his motion to vacate the default—in which he explained that the emails from the district court were being sent to the junk folder in his email. Even if we accepted as true the father's belated claim that notification emails of court filings ended up in his junk email folder, we do not accept this explanation as excusable neglect. Given that the pretrial conference the father failed to attend took place nearly one year after the entry of the order setting that conference and trial, we find the father's neglect inexcusable. If the father was reasonably intending to defend, we would expect him to notice he was not receiving any information from the court well before a year had passed. We would then expect him to investigate the cause of the silence from the court, especially when he had filed his own document resisting a motion filed by the mother and would be expecting a ruling from the court on the mother's motion.[1]

---

[1] Approximately two months following entry of the order setting the pretrial conference and trial, the mother filed a motion seeking to garnish the father's wages. The father apparently got notice of this filing, as he filed a prompt and timely response. This would have caused the father to expect a ruling, which, if he did not receive it, should have caused him to investigate why he was not receiving notifications from the court. Such investigation would have more promptly discovered the claimed problem with delivery of email notifications from the court. Also, the fact the father got notice of the mother's filing and responded to it also calls into question the father's claim he was not receiving notifications from the court.

We also note that the father was not completely unsuccessful in his efforts to set aside the default. Rule 1.977 permits the court to set aside default "upon such terms as the court prescribes." In this case, even though the father was held in default, the father was allowed to testify and to cross-examine the mother and her witnesses. The father presents no information as to what, if any, evidence he would have presented had he not been held in default.

Under these circumstances, we conclude the district court did not abuse its discretion in partially denying the father's motion to set aside the default and limiting him to his own testimony and cross-examination of the mother and her witnesses.

### B.     The Merits of Modification

The father next argues the mother did not meet her burden to show either that there was a substantial change in circumstances warranting modification and that she is the superior parent to the father. On our de novo review, we agree with the district court that the mother has met both burdens.

We use well-established principles to determine whether a modification should occur:

> To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being.

*Thorpe v. Hostetler*, 949 N.W.2d 1, 5 (Iowa Ct. App. 2020) (quoting *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)). "[O]ur primary focus is the best interests of the child." *Id.*

The parties originally stipulated to both joint legal custody and joint physical care of the children. To decide whether joint physical care is appropriate, we consider four factors: "(1) stability, continuity of caregiving, and approximation; (2) 'the ability of the spouses to communicate and show mutual respect'; (3) 'the degree of conflict between parents'; and (4) 'the degree to which the parents are in general agreement about their approach to daily matters.'" *In re Marriage of Hansen*, 886 N.W.2d 868, 874 (Iowa Ct. App. 2016) (quoting *In re Marriage of Hansen*, 733 N.W.2d 683, 698–99 (Iowa 2007)).

The mother contends, and the district court concluded, there had been a substantial change in circumstances due to the deterioration of the relationship between the parties since the dissolution decree was entered. We agree. This case has been litigated almost continuously since the district court entered the original dissolution decree in 2017. The father's actions since then indicate he is unwilling to work cooperatively with the mother. His failures to make a number of financial contributions for the children have already led to him being held in contempt of court. It appears he still has not paid certain healthcare premiums the dissolution decree requires him to pay. In addition, the father has called the mother derogatory and profane names in front of the children on more than one occasion. The district court noted the children themselves seem to have noticed the father's animosity for the mother, noting the children seem to "walk on eggshells" when they know the mother and father are going to be in the same room. Furthermore,

the father's willingness to communicate with the mother regarding the children, while not stellar at the time the dissolution decree was entered, has noticeably declined since entry of the original decree to the point it is a problem. *See In re Marriage of Roberts*, No. 10-0387, 2010 WL 3325612, at *2 (Iowa Ct. App. Aug. 25, 2010) ("A breakdown in the parents' cooperation and communication concerning a shared physical care arrangement may constitute a substantial change of in circumstances."). Following our de novo review, we agree with the district court that a shared or joint physical care arrangement is no longer sustainable and not in the children's best interest.

As joint physical care is no longer an option, we must now determine which parent is better suited to be the children's physical caretaker. In this inquiry, we ask which parent can "minister more effectively to the routine daily needs of the [child]." *Thorpe*, 949 N.W.2d at 7 (quoting *Frederici*, 338 N.W.2d at 160). "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Id.* (quoting *Hansen*, 733 N.W.2d at 695). We consider the factors listed in Iowa Code section 589.41(3) (2017) and the non-exclusive factors listed in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974).

The district court concluded it was in the children's best interest to be placed with the mother. On our de novo review, we agree. The record shows that the father struggles to engage in the planning and prioritization necessary to parent the children while the mother does not. When the children were in the father's care during the 2018-19 school year, N.D. was late or absent from school twenty-eight times. The father has also failed repeatedly to bring N.D. to extracurricular

activities on time, including competitive basketball games, resulting in N.D.'s coaches contacting the mother to express concern about N.D.'s timeliness while in the father's care. The evidence also established the father took G.D. out of preschool early several times, and on other occasions did not take her to preschool at all.[2] The father admitted on cross-examination that on one occasion, he simply assumed G.D. would have school off because N.D., who attended a different school, had that day off.[3] There is no evidence either N.D. or G.D. have been late to school or to extracurricular activities while in the mother's care.

We acknowledge the father has taken an active role in the children's lives and the children have benefited and will continue to benefit by their time with him and his family. However, given that joint physical care is no longer a viable option, we have no hesitation in concluding the children are more appropriately placed in the mother's physical care.

In addition to not being able to manage the logistics of having the children in his care, the father's unwillingness or inability to communicate with the mother results in unneeded stress for all involved. Furthermore, the father's bitterness over the split has led to him initiating confrontations with the mother's significant

---

[2] The evidence established N.D. and G.D. attended different schools and G.D.'s school ended later than N.D.'s. The mother testified the father would take G.D. out of school early after picking N.D. up because he did not want to wait around until G.D.'s school day was done. While the father denies this as the reason, we note the mother's version of events is consistent with other evidence we believe.

[3] The father's suggestion that this was an honest mistake is belied by the record. The evidence established N.D.'s school was not in session that day, but G.D.'s was. The evidence further established the mother anticipated the father would neglect to notice G.D. had school, so she notified the father the night before that G.D. had school the next day. In spite of the reminder, the father neglected to take G.D. to school.

other in front of the children and him calling the mother derogatory and profane names in front of the children. These episodes have resulted in direct, observable stress to the children that lasts long past the time when the episodes end. The children have expressed feelings of jealousy of other children of divorced parents whose parents attend events together without tension and strife. The father has also been irresponsible in fulfilling his financial obligations for the children, resulting in him being found in contempt of court. He has also been resistant to the children receiving mental-health treatment, which is troubling in itself, but especially so when he has significantly contributed to the need for such treatment. We are firmly convinced the mother demonstrates "an ability to minister more effectively to the children's well being" than the father. *See Thorpe*, 949 N.W.2d at 5.

### C. Appellate Attorney Fees

Finally, we address the mother's request for an award of appellate attorney fees. Appellate attorney fees are not awarded as a matter of right, but we may award them at our discretion. *In re Marriage of Hoffman*, 891 N.W.2d 849, 852 (Iowa 2016). "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *Id.* (quoting *In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa Ct. App. 1997)). While the mother sets forth the legal principles governing an award of appellate attorney fees, she makes no citation to record facts and advances no arguments as to how the facts justify an award when the legal principles are applied. Therefore, we decline to award the mother

appellate attorney fees.[4]  *See Venckus v. City of Iowa City*, 930 N.W.2d 792, 806 (Iowa 2019) ("Judges are not like pigs, hunting for [meritorious] truffles buried in [the record]." (alterations in original) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))); *State v. Tyler*, 867 N.W.2d 136, 166 n.14 (Iowa 2015) (indicating a "passing reference" in a brief is insufficient); *Soo Line R.R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994) (holding mention of an issue, without elaboration or supportive authority, is insufficient to raise the issue for appellate consideration).

## IV.    Conclusion

We agree with the district court that there has been a substantial change of circumstances justifying modification of the parties' decree.  We also agree that placing physical care of the children with the mother is in the children's best interest.  Placing physical care with the mother and providing visitation to the father will allow the children to maintain a bond with the father while at the same time minimizing the children's exposure to conflict between the parents, ensuring the children are attending school and their extracurricular activities on time, and have consistency in their day-to-day lives.

**AFFIRMED**.

---

[4] Our conclusion not to award attorney fees because no argument was advanced should not be construed as a requirement or request for extensive or lengthy briefing or argument on the issue.  We ask only for sufficient argument, coupled with citation to the record, to enable us to apply the legal principles cited in a party's brief to the facts of the case to make a determination on the issue.