# IN THE SUPREME COURT OF IOWA

No. 20–1663

Submitted January 19, 2023—Filed February 24, 2023

**LINCOLN SAVINGS BANK,**

Appellee,

vs.

**DEBRA D. EMMERT,**

Appellant,

and

SIMPSON FURNITURE COMPANY, EMMERT MANAGEMENT, LLC, DALE T. EMMERT, IOWA DEPARTMENT OF REVENUE and BERGEN PLUMBING, INC.,

Defendants.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, Linda M. Fangman, Judge.

A defendant seeks further review of the court of appeals decision that affirmed a default judgment in a foreclosure case. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

McDermott, J., delivered the opinion of the court in which all participating justices joined. McDonald and May, JJ., took no part in the consideration or decision of the case.

Gregg A. Geerdes (argued), Iowa City, for appellant.

David T. Bower (argued), Jeffrey W. Courter, and Roy R. Leaf of Nyemaster Goode, P.C., Des Moines, for appellee.

**McDERMOTT, Justice.**

The initial steps in a typical lawsuit are straightforward. A plaintiff files a petition with the court that alleges a claim against a defendant and then serves the defendant with the petition. The defendant, in turn, files an answer or other document responding to the petition within a specified time. If the defendant fails to file any response by the deadline, the plaintiff may apply for a default judgment against the defendant.

But the law favors resolution of disputes on their merits, not through procedural defaults. And to help ensure that defaults are entered based on informed choice, not oversight, our rules of civil procedure require an extra step in the process. The court will not give a default judgment unless the plaintiff first sends, in writing, a "notice of intent" to file an application for default judgment. The notice serves as a move-it-or-lose-it warning that the plaintiff intends to ask for a default judgment unless the defendant files a response within ten days.

When a defendant is known to be represented by a lawyer, our rules require the plaintiff to send a copy of the notice of intent to the lawyer. The question in this appeal—one that this court has never been presented with in any previous case—is whether the plaintiff must send a copy of the notice of intent *to the defendant* in addition to the defendant's lawyer.

### I. The Foreclosure Lawsuit and Entry of the Default Judgment.

Debra Emmert and her then-husband owned and operated a furniture store and a related management company. The furniture store and management company took out about $5 million in loans from Lincoln Savings Bank. As

security for the loans, the bank took mortgages on two properties, security interests in certain business and personal property, and a personal guaranty from Emmert. When loan payments failed to arrive, the bank filed a petition to foreclose the mortgages and security interests.

The bank served the foreclosure lawsuit on an attorney named Phillip Brooks. The parties dispute the scope of Brooks's representation of Emmert in this matter. Emmert argues that Brooks had represented her on a matter unrelated to the bank's foreclosure lawsuit (a replevin action), while the bank argues that Brooks was communicating and holding himself out as Emmert's lawyer in the foreclosure lawsuit. Putting aside for the moment questions about the scope of Brooks's representation, the record shows that Brooks filed an acceptance of service of the foreclosure petition on Emmert's behalf and that neither Brooks nor Emmert, nor anyone else acting on Emmert's behalf, filed any response to the petition.

After the deadline to file a responsive pleading had passed, the bank mailed a written notice of intent to file for a default judgment to Brooks. The bank did not separately mail any notice of intent to Emmert. A few months later, the bank filed its application for default judgment. The district court promptly entered a default judgment against Emmert and the other defendants.

Some months later, the bank asked the court for permission to amend the petition against the defendants (even though the court had already entered a default judgment) based on the bank's purchase of a senior mortgage on one of the foreclosed properties. The district court granted the bank permission to

amend, and the bank refiled its petition against Emmert and the other defendants. The bank sent Brooks a copy of the newly-amended petition by certified mail.

The ensuing events began to unfold just as before. No one filed any response to the petition by the deadline. The bank mailed a written notice of intent to file for a default judgment to Brooks (but not to Emmert). The bank timely filed its application for default judgment, which the district court again promptly granted. The bank thereafter provided information to the district court for entry of a detailed foreclosure judgment that reflected the updated amount of the debt and other particulars.

But while that foreclosure judgment remained outstanding, lawyer Gregg Geerdes filed an appearance in the case on Emmert's behalf. Geerdes filed no other documents with his appearance. About three weeks later, the court entered the foreclosure judgment against Emmert and the other defendants. Within a couple of hours, Geerdes filed a motion asking the court not to enter the foreclosure judgment (too late, as it turned out) or, in the alternative, to set aside the foreclosure judgment.

The district court took no action on Geerdes's motion not to enter, or to set aside, the foreclosure judgment. Two weeks later, Emmert (represented by Geerdes) appealed the foreclosure judgment. Nearly two months after filing the appeal, she moved in the district court to set aside the default judgment and to enlarge and reconsider the foreclosure judgment. We transferred the appeal to the court of appeals. The court of appeals correctly concluded that the district

court lacked the power to rule on the motions filed after her notice of appeal because her appeal divested the district court of jurisdiction. *See State v. Mallett*, 677 N.W.2d 775, 777 (Iowa 2004). On Emmert's other claims, the court of appeals determined that the bank satisfied the notice rule by mailing the notice of intent only to Brooks and affirmed the district court's default judgment. Emmert applied for further review, which we granted.

Emmert is the only defendant challenging the notice and the resulting default judgment. She makes two arguments relevant to our resolution of this appeal, both centered on the "notice of intent" that the bank was required to send. First, she argues that notice to Brooks was improper because Brooks was not her attorney and had never been the attorney of record in this matter. Second, she argues that even if Brooks had been serving as her lawyer in this matter, sending notice to Brooks alone wasn't enough—the bank needed to send the notice of intent to *her* in addition to her lawyer.

**II. Iowa Rule of Civil Procedure 1.972 and Whether the Bank Was Required to Send a Copy of the Notice of Intent to Emmert.**

The outcome of this appeal hinges on our construction of Iowa Rule of Civil Procedure 1.972, which is the rule that sets out the requirements for obtaining a default judgment. We review the interpretation of our rules of civil procedure under a "correction of errors at law" standard, and thus we conduct our own analysis without deference to the lower court's interpretation. *See McGrew v. Otoadese*, 969 N.W.2d 311, 319 (Iowa 2022). Failing to comply with the notice provisions of the rule leaves the district court "without authority to enter the order of default." *Dolezal v. Bockes*, 602 N.W.2d 348, 352 (Iowa 1999). Despite

the untold hundreds (if not thousands) of cases that have ended in default judgments in Iowa courts in the decades since the notice-of-intent requirement came into being, we've somehow never had a case addressing the particular question before us.

The rule states in relevant part:

> **1.972(2)** *Application.* . . . No default shall be entered unless the application contains a certification that written notice of intention to file the written application for default was given after the default occurred and at least ten days prior to the filing of the written application for default. A copy of the notice shall be attached to the written application for default. . . .
>
> **1.972(3)** *Notice.*
>
> *a. To the party.* A copy of the notice of intent to file written application for default shall be sent by ordinary mail to the last known address of the party claimed to be in default. No other notice to a party claimed to be in default is required.
>
> *b. Represented party.* When a party claimed to be in default is known by the party requesting the entry of default to be represented by an attorney, whether or not that attorney has formally appeared, a copy of notice of intent to file written application for default shall be sent by ordinary mail to the attorney for the party claimed to be in default. This rule shall not be construed to create any obligation to undertake any affirmative effort to determine the existence or identity of counsel representing the party claimed to be in default.
>
> *c. Computation of time.* The ten-day period specified in rule 1.972(2) shall begin from the date of mailing notice, not the receipt thereof.
>
> *d. Form of notice.* The notice required by rule 1.972(2) shall be substantially as set forth in rule 1.1901, Form 10.

Iowa R. Civ. P. 1.972(2)–(3).

Emmert urges that we read paragraphs (*a*) and (*b*) of rule 1.972(3) as conjunctive, as if the list is joined by the word *and*, thus requiring notice to the

party and also to the party's lawyer if the party is known to be represented. The bank, conversely, urges that we read paragraphs (*a*) and (*b*) as disjunctive, requiring notice to the party if the party is *not* known to be represented but requiring notice only to the lawyer if the party *is* known to be represented.

In 1997, we amended what is now rule 1.972 to include a notice-of-intent mailing requirement. That rule change followed our decision a few years earlier in *Central National Insurance Co. of Omaha v. Insurance Co. of North America*, 513 N.W.2d 750, 757 (Iowa 1994). In that case, a defendant tried to set aside a default judgment because the plaintiff failed to notify the defendant's lawyer before filing an application for a default judgment. *Id.* at 754. At the time, our default judgment rule was silent about any notice requirements before seeking a default. *Id.* The defendant argued that the plaintiff's failure to notify opposing counsel violated longtime "custom and practice generally followed by attorneys" in that county. *Id.*

Construing the language of the rule at the time, we determined that the rule afforded the defendant no relief; the custom and practice of attorneys in that county wasn't enough to impose a legal requirement. *Id.* But we rhapsodized about the benefits of a potential rule requiring notice before a court could enter a default judgment. *Id.* Such a rule, we said, might avoid "bungles"—excusable oversights—that resulted in default judgments, thus making our rule "more fair and consistent." *Id.* at 757. We noted that one state, Pennsylvania, had already adopted a rule requiring notice to all defaulting parties. *Id.* Our aspiration was clearly stated: "Notice to all defaulting parties—not just those represented by

counsel—should be given." *Id.* And within a few years, we revised the rule to require sending a written notice of intent before seeking a default judgment—as it now appears in rule 1.972 (as block-quoted above).

But while our discussion of the notice of intent in *Central National Insurance* addressed the benefits of requiring notice, we didn't explicitly define who must be served notice. The text of the Pennsylvania rule that we referred to specified that the notice go to both the party and the party's lawyer, requiring notice "mailed or delivered . . . to the party against whom judgment is to be entered *and* to the party's attorney of record, if any." Pa. R. Civ. P. 237.1(a)(2)(ii) (1994) (emphasis added). The text of Iowa's rule tracks, but doesn't mirror, Pennsylvania's rule.

Both sides in this case nonetheless point to the Pennsylvania rule to support their proposed construction. Emmert urges that we read Iowa's rule to correspond to Pennsylvania's rule—and its requirement for notice to *both* party *and* lawyer—based on our reference to it in *Central National Insurance*. The bank, conversely, urges that we read the absence of the word *and* between "party" and "attorney" in paragraphs (*a*) and (*b*) in rule 1.972(3) as a deliberate choice that shows an intent *not* to require mailing of the notice to both party and lawyer as Pennsylvania's rule did.

Both parties' arguments on this point, in our view, put a little too high a premium on our mention of the Pennsylvania rule. We noted it as one example of a pre-default notice requirement, stating simply that "[o]ne state has done just that," followed by a cite to the rule number and this parenthetical note: "(ten

days['] notice of intent to take default required)." *Cent. Nat. Ins.*, 513 N.W.2d at 757. Our mention of the Pennsylvania rule on the general issue of a notice requirement, such as it was, provides dim light to illuminate the more granular question presented in this case about the required recipients of the plaintiff's notice.

In their treatise on interpreting texts, Justice Scalia and Bryan Garner discuss the "conjunctive/disjunctive canon" and how to construe multi-element lists that include, or fail to include, conjunctions such as *and* or *or*. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 116–25 (2012) [hereinafter Scalia & Garner]. They describe a rhetorical technique— called *asyndeton*—in which "drafters will omit conjunctions altogether between the enumerated items." *Id.* at 118–19. When a drafter does not include a conjunction, the text "is generally considered to convey the same meaning . . . as though *and* were inserted between the items." *Id.* at 119. In other words, "asyndeton (absence of conjunction) is normally equivalent to syndeton (use of the conjunction *and*)." *Id.* at 124. This interpretative canon generally supports Emmert's argument that paragraphs (*a*) and (*b*) of rule 1.972(3) should be read in the conjunctive form.

The bank argues that the reference to "notice" in its singular form throughout the rule indicates that only one notice is required. The bank recites that the rule requires the application for default judgment include a certification that "written *notice* of intention to file" the application was given and that "a copy of the *notice* shall be attached." Iowa R. Civ. P. 1.972(2) (emphases added). These

references to *notice* in the singular seem to point in the bank's direction. But other language in the rule blunts the force of the bank's argument. The language from rule 1.972(2) ("[a] *copy* of the notice") and paragraphs (*a*) ("[a] *copy* of the notice of intent") and (*b*) ("a *copy* of notice of intent") of rule 1.972(3) all refer to delivery of a *copy* of the notice, not an actual notice of intent document itself. *Id.* rs. 1.972(2), 1.972(3)(*a*)–(*b*). In this way, the rule seems to contemplate that the lawyer might retain an original version but make *copies* of the notice (1) for filing with the application for default judgment under rule 1.972(2), and (2) for mailing under rule 1.972(3). Reading the rule in full, the use of "notice" in the singular does little to advance the bank's proposed construction.

We also find the rule's headings instructive. Although titles and headings can't override the plain words of a text, they are permissible aids in resolving textual ambiguities. *Des Moines Flying Serv., Inc. v. Aerial Servs. Inc.*, 880 N.W.2d 212, 220–21 (Iowa 2016) (citing Scalia & Garner at 221). The heading to paragraph (*a*) of rule 1.972(3) uses the phrase "[*t*]*o the party*," and paragraph (*b*) uses the phrase "[*r*]*epresented party*." Iowa R. Civ. P. 1.972(3)(*a*)–(*b*). If the mailing requirements were meant to be disjunctive, one might expect paragraph (*a*) to have a more descriptive heading that refers to the party's lack of representation, such as "*unrepresented party*" (or even, "*to the party not known to be represented by an attorney*"). The headings as written suggest that paragraph (*a*) requires a notice mailed "to the party" *regardless* of whether the party is represented, with paragraph (*b*) requiring an additional notice when the party is "represented." *Id.*

Paragraph (*d*) of rule 1.972(3) further supports a conjunctive reading of this rule. Titled *"Form of notice,"* paragraph (*d*) states that "[t]he notice required by rule 1.972(2) shall be substantially as set forth in rule 1.1901, Form 10." *Id.* r. 1.972(3)(*d*). Here is the entirety of Form 10:

**Rule 1.1901 — Form 10:** *Form of Notice of Intent to File Written Application for Default*

IN THE IOWA DISTRICT COURT FOR _____ COUNTY

| Plaintiff(s), | No. _____ |
|---|---|
| vs. | **NOTICE OF INTENT TO FILE WRITTEN APPLICATION FOR DEFAULT** |
| Defendant(s). | |

TO: (defendant)

DATE OF NOTICE: (date of mailing)

IMPORTANT NOTICE

YOU ARE IN DEFAULT BECAUSE YOU HAVE FAILED TO TAKE ACTION REQUIRED OF YOU IN THIS CASE. UNLESS YOU ACT WITHIN TEN DAYS FROM THE DATE OF THIS NOTICE, A DEFAULT JUDGMENT WILL BE ENTERED AGAINST YOU WITHOUT A HEARING AND YOU MAY LOSE YOUR PROPERTY OR OTHER IMPORTANT RIGHTS. YOU SHOULD SEEK LEGAL ADVICE AT ONCE.

_____
(Signature of Plaintiff or Attorney)

_____
(Address)

_____
(Telephone Number)

[Report October 31, 1997, effective January 24, 1998; November 9, 2001, effective February 15, 2002]

Several points stand out. The addressee that's identified ("TO:") suggests insertion only of the "(defendant)" and not, for instance, "(or defendant's counsel, as applicable)." And the language of the actual notice itself makes repeated reference to "YOU." In the context of the addressee line, we can expect that the "YOU" refers to the defendant. Reading the language of the notice leaves no doubt about this. "YOU"—the party in this lawsuit—are in default; not the lawyer. A default will be entered against "YOU"—the defendant; a default judgment isn't

entered against the lawyer. "YOU"—the defendant—may lose your property or important rights; the lawyer doesn't have property or rights at stake in the case. "YOU"—the party in this lawsuit—should seek legal advice at once; the lawyer obviously doesn't need to seek advice since the lawyer is the one presumed to possess the legal knowledge. The required notice form, in our view, supports a conjunctive interpretation of the rule that requires notice mailed to the defendant in all cases, with a copy to the defendant's lawyer if the defendant is represented.

The bank argues that reading rule 1.972 to require mailing a notice to both a party and the party's lawyer would run afoul of attorney ethics rules, and thus that such an interpretation could not have been intended. The ethics rule in question, Iowa Rule of Professional Conduct 32:4.2(a), forbids a lawyer to communicate "about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." But the carveout at the end of the ethics rule—"unless the lawyer . . . is authorized to do so by law"—leaves this argument begging the question. In other words, the argument's premise (requiring notice to a represented party violates an ethics rule) assumes the truth of the conclusion (the default notice rules shouldn't require violations of an ethics rule). If we construe rule 1.972 to require notice to both the party and the party's lawyer, no ethical violation occurs because the lawyer is authorized to do so by law. The ethics rule thus doesn't illuminate, let alone dictate, the requirements of our notice rule.

The bank also argues that we must construe the text to find service of the notice sufficient when sent only to the party's lawyer since such a reading avoids disharmony with our procedural rules about service of other papers in lawsuits. Iowa Rule of Civil Procedure 1.442(1) states that "[u]nless the court otherwise orders, everything required to be filed by the rules in this chapter . . . [including] every written notice . . . shall be served upon each of the parties." The next rule states that when a party is represented by a lawyer, service "shall be made upon the attorney unless service upon the party is ordered by the court." *Id.* at 1.442(2). But this argument, much like the one before, begs the question. The premise assumes that service on both the defendant and the defendant's lawyer isn't required by another rule. If we construe rule 1.972(3) to require service on the party in addition to the party's lawyer, there's no disharmony with rule 1.442. *Cf.* Iowa R. Civ. P. 1.517(1)(*e*) (entitled "Notice to litigants" and requiring that an order compelling discovery be served on both counsel and the party or parties whose conduct necessitated the motion to compel).

As a final matter, we return to a point we made in *Central National Insurance* about the benefits of requiring a notice-of-intent mailing before seeking a default judgment. Notice helps to avoid the "bungles"—excusable neglect in responding to the petition—that prevent parties from defending against claims on the merits. 513 N.W.2d at 757. There exists "a longstanding policy in our state favoring the resolution of legal disputes on the merits," and consistent with that longstanding policy, "default judgments are disfavored." *No Boundry, LLC v. Hoosman,* 953 N.W.2d 696, 699 (Iowa 2021). Our default

judgment rules rest on the notion that a defendant's failure to respond to a lawsuit communicates an intent to concede the claim and accept the consequences, akin to a knight in Arthurian legend declaring "I yield" to surrender in a swordfight. *See* T.H. White, *The Once and Future King* 62, 344 (1939). Construing rule 1.972 as we do today—requiring plaintiffs to send the ten-day notice of intent to file an application for default to *both* the party *and*, if known, the party's counsel—provides stronger protection against default judgments entered based on oversight instead of volition.

**III. Conclusion.**

We hold that rule 1.972(3) required the bank to mail notice of intent to both Emmert and Emmert's lawyer. The bank's failure to comply with the rule's notice provisions left the district court without authority to enter the default judgment against Emmert. *See Dolezal*, 602 N.W.2d at 353. Today's decision does not affect the finality of judgments. If notice of intent was not mailed as required by rule 1.972(3) and a judgment was entered before the date of this decision, that judgment may be attacked only by an otherwise proper and timely postjudgment motion or appeal. Because we find in Emmert's favor on her challenge on this ground, we need not resolve her separate argument that Brooks did not represent her in this matter and thus that mailing to Brooks alone was insufficient.

We vacate the court of appeals decision, reverse the district court's default judgment, and remand this case to the district court to proceed against Emmert

only since only she has mounted a challenge to the default judgment. The judgment entered against other defendants remains undisturbed.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

McDonald and May, JJ., take no part.